*78 OPINION OF THE COURT
Levine, J.
In the spring of 1980, defendant was indicted for the murder of a 16-year-old high school student. The indictment was based principally on defendant’s own inculpatory statements, which had been made to the District Attorney’s representative upon the advice of defendant’s retained attorney. In 1983, this Court affirmed the denial of defendant’s motion to suppress these inculpatory statements after rejecting appellate counsel’s contention that they were the result of a violation of defendant’s Sixth Amendment right to the effective assistance of counsel (People v Claudio, 59 NY2d 556 [Claudio I]). Defendant appears before us once again following a ruling by the United States Court of Appeals for the Second Circuit that a writ of habeas corpus should be granted and defendant released from State custody "unless the state affords [defendant] an opportunity to present [his] Article 1, § 6 state law claim to the New York Court of Appeals” (Claudio v Scully, 982 F2d 798, 806). We now hold, as we did in Claudio I, that the ineffectiveness of defendant’s first retained counsel affords no basis for reversal of his conviction.
We accept the premise, which was shared by every court that has considered this case, that retained counsel’s conduct in advising defendant to confess to the police — at a time when there was no concrete evidence against him and no possibility of a plea offer — represented gross professional incompetence (see, Claudio I, supra, at 560; 85 AD2d 245, 251; Claudio v Scully, 982 F2d 798, 802, supra). The dispositive issue, therefore, is whether our holdings that the State constitutional right to counsel indelibly attaches when a criminal suspect invokes that right by obtaining an attorney (see, People v Skinner, 52 NY2d 24; People v Hobson, 39 NY2d 479; People v Arthur, 22 NY2d 325) imply a constitutional State guarantee of effective assistance of counsel when an attorney enters a case on a suspect’s behalf. We conclude that, except in most unusual circumstances not present here, the State is not charged with the responsibility of guaranteeing effective legal representation upon the entry of counsel at the preaccusatory, investigatory stage of a criminal matter, i.e., before the commencement of formal adversarial judicial criminal proceedings.
Defendant acknowledges that all our relevant precedents have involved some law enforcement official’s disregard of or *79 interference with the attorney-client relationship by interrogation of the defendant in the absence of retained or assigned counsel. However, as we held in Claudio I, in the instant case, the prosecutor and the police scrupulously honored defendant’s relationship with his retained attorney. Furthermore, defendant has not cited any case declaring a State constitutional right to effective assistance of counsel at the preaccusatory stage of a criminal investigation. However, defendant argues that logically, once his State right to counsel indelibly attaches, the panoply of constitutional guarantees associated with the right to counsel spring into being. Defendant supports this deduction largely with the statement in People v Skinner (supra) that the bar to an effective waiver of the right to counsel in the absence of a suspect’s attorney "simply recognizes the right and need of an individual to have a competent advocate at his or her side in dealing with the State” (52 NY2d, at 29 [emphasis supplied]).
In our view, Skinner and its predecessors (supra) are inapposite to this case. Our holdings that the right to counsel indelibly attaches upon the entry of counsel at the preaccusatory stage involve different constitutional concerns and interests from the guarantee of effective legal representation. Moreover, any implication that the language employed in Skinner to which defendant cites was intended broadly to extend the right to effective legal assistance to the preaccusatory stage, is dispelled by the more specific effective representation cases decided by this Court subsequent to Skinner. *
To be sure, we have developed a somewhat different test for ineffective assistance of counsel under article I, § 6 of the New York Constitution from that employed by the Supreme Court in applying the Sixth Amendment (compare, People v Baldi, 54 NY2d 137, 147, supra, with Strickland v Washington, 466 US 668, 687). Nonetheless, the basic purposes and constitutional interests at stake under both constitutional guarantees of an adequate legal defense in a criminal case are the same: (1) the preservation of our unique adversarial system of criminal justice, the underlying presupposition of which " 'is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free’ ” (United States v Cronic, 466 US 648, 655 *80 [quoting Herring v New York, 422 US 853, 862]); and (2) the correlative necessity to provide a defendant with an advocate sufficiently competent to insure "fairness in the adversary criminal process” (United States v Morrison, 449 US 361, 364 [emphasis supplied]). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial” (United States v Cronic, supra, at 658). These concerns are subsumed in our adoption of the standard of meaningful representation for the fulfillment of the State’s own constitutional responsibility to insure effective assistance of counsel to the criminally accused (People v Baldi, supra, at 147). Moreover, the guarantee exists independent of any prosecutorial or judicial misconduct interfering with defense counsel’s effectiveness (Strickland v Washington, 466 US, at 686, supra).
The foregoing intrinsic premise and purposes of the constitutional right to effective representation — as the bulwark of our adversary system of criminal justice and an absolute necessity to achieve fairness to the accused within that adversary system — imply that the guarantee of effective assistance of counsel is not triggered until adversarial judicial criminal proceedings have been instituted against a defendant, and the Federal cases so hold. Thus, in Kirby v Illinois (406 US 682) the Supreme Court held that no rights under the Sixth Amendment accrue until the commencement of the criminal action.
"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions’ to which alone the explicit guarantees of the Sixth Amendment are applicable” (id., at 689-690).
The language of our State Constitution also suggests that the guarantee of effective assistance of counsel does not arise until the commencement of adversarial judicial proceedings: "In *81 any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions” (NY Const, art I, § 6 [emphasis supplied]). Thus, it has been held that, generally, it is only at arraignment immediately after the start of judicial criminal proceedings that an indigent defendant first becomes entitled to the assignment of counsel (see, Strickland v Washington, 466 US, at 685, supra; see also, People v Samuels, 49 NY2d 218, 223).
Our cases holding that a suspect’s preaccusatory right to counsel indelibly attaches when retained or assigned counsel assumes representational responsibility do not implicate the same purposes and concerns as underlie the constitutional guarantee of effective assistance of counsel. Our rationale in those cases for applying an indelible right to counsel at the preaccusatory stage is essentially prophylactic, to prevent official overreaching and to insure that any waiver of the right to counsel is untainted. Thus, we have explained that a criminal suspect, by invoking the right to counsel, expresses a lack of competence to deal with law enforcement authorities without legal advice and, hence, needs the same protection before waiving the right to counsel (People v Cunningham, 49 NY2d 203, 209). And, in People v Hobson (39 NY2d 479, supra), we emphasized that "the presence of counsel is a more effective safeguard against an involuntary waiver of counsel than a mere written or oral warning in the absence of counsel” (id., at 484 [emphasis supplied]), and that procurement of a waiver of counsel in the absence of the suspect’s attorney violates ethical precepts barring interference with the attorney-client relationship (id.). We also said in People v Bell (73 NY2d 153): "[o]ur ruling [in People v Skinner, supra] was designed to prevent the police from rendering the right to counsel ineffective by questioning the defendant about matters relating to the subject of the representation in the absence of counsel retained on the matter” (73 NY2d, at 160 [emphasis supplied]).
Because People v Skinner and its predecessors (supra) deal not with the role of defense counsel in preserving our adversary system of criminal justice, but rather " '[preserving the integrity of an accused’s choice to communicate with police only through counsel’ ” (Minnick v Mississippi, 498 US 146, 153 [quoting Patterson v Illinois, 487 US 285, 291]), they have no precedential value for extending the State’s guarantee of effective assistance of counsel to a suspect, such as defendant, *82 at the preaccusatory stage. More to the point are our holdings in Claudio I and in People v Beam (57 NY2d 241).
In Claudio I, we ruled that defendant’s Sixth Amendment right to effective assistance of counsel had not yet become operative and, hence, was not violated by his attorney’s incompetent advice to confess to the police at the preaccusatory stage of the criminal proceedings in which he was involved. Our reasons for so holding are equally applicable to defendant’s claim here. In Claudio 1', we noted that, because defendant’s confession occurred before the accusatory stage had begun, he would not have been entitled to assigned counsel when he was interrogated by the police had he then requested rather than retained a lawyer (see, People v Samuels, supra; Strickland v Washington, supra). We then reasoned that "[inasmuch as defendant would have had no right to insist that a lawyer be provided for him when he talked to the authorities, he should not be rewarded by a suppression order merely because he chose to bring a lawyer who proved valueless” (Claudio I, 59 NY2d 556, 561, supra). A second ground we expressed in Claudio I for refusing to impose at the preaccusatory stage an obligation under the Sixth Amendment to provide effective representation was that, prior to the beginning of formal adversary judicial proceedings, the courts have neither the ability to detect nor the means to remedy incompetent or disloyal conduct of defense counsel (id., at 562). The same is true with respect to the State right to effective representation. Indeed, any intervention by State agents to remedy any suspected incompetent advice of defendant’s attorney would have been barred by our holdings in People v Skinner and People v Hobson and by the ethical precepts invoked in those cases.
In People v Beam (supra), we flatly rejected the claim that the preaccusatory right to counsel of Skinner created a corresponding State obligation to provide effective assistance of counsel at the same stage. We said in People v Beam:
"When a person has had the benefit of counsel and then chooses to waive one of his rights, the police are not required to question the validity of that decision as long as they are assured that the decision was made in consultation with the suspect’s attorney. * * * As long as the police honored the defendant’s right to counsel, and determined that he was speaking with them on advice *83 of counsel, the defendant was afforded all the protections encompassed by the constitutional right to counsel” (id., at 254-255).
Thus, although in People v Beam we discussed the possibility that the retained attorney’s improvident advice was not attributable to incompetence but rather to the incomplete information the defendant gave his attorney, the central holding of Beam is that the right to counsel that had indelibly attached by the entry of a retained attorney at the preaccusatory stage was simply the right not to have the attorney-client relationship interfered with or disregarded by law enforcement authorities. This right to counsel at that stage does not guarantee the efficacy of the attorney’s representation; it only requires law enforcement agencies to honor fully " 'the integrity of an accused’s choice to communicate with police only through counsel’ ” (Minnick v Mississippi, 498 US 146, 153, supra).
Because the law enforcement authorities in this case did fully honor the right to counsel of defendant which attached when he retained and then consulted with his attorney, he has not established any violation of article I, § 6 of our New York Constitution arising out of his attorney’s incompetent advice.
Accordingly, on reargument, the order of the Appellate Division should be affirmed.

 It is also dispelled by the fact that, virtually contemporaneously with Skinner, this Court declined to adopt a "competency” standard for the right to eifective assistance of counsel (see, People v Baldi, 54 NY2d 137, 146-147).