84 N.Y.2d 184 (1994)
639 N.E.2d 19
615 N.Y.S.2d 662
The People of the State of New York, Respondent,
v.
Rafael Flores, Appellant.
Court of Appeals of the State of New York.
Argued June 8, 1994.
Decided July 7, 1994.
Howard A. Pincus, New York City, and Ira Mickenberg for appellant.
Robert T. Johnson, District Attorney of Bronx County, Bronx (Daniel S. Ratner, Joseph N. Ferdenzi and Billie Manning of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, SMITH and LEVINE concur with Judge BELLACOSA; Judge TITONE dissents and votes to reverse in a separate opinion in which Judge CIPARICK concurs.
*186 BELLACOSA, J.
Defendant was convicted after a jury trial of four counts of sodomy in the first degree (Penal Law § 130.50 [1], [2]), charges arising out of his deviate sexual intercourse with a six-year-old boy who lived in defendant's apartment building. The judgment was affirmed by the Appellate Division, and a Judge of this Court granted leave to appeal. The sole dispositive issue before this Court is whether defendant was deprived of effective assistance of counsel at the trial level.
At the close of the People's evidence, defense counsel, without requesting any relief or a mistrial, notified the court that his request for all possible Rosario material had not been satisfied. He had decided to proceed during the trial, without objection as to any Rosario concerns, to full cross-examination of the People's witnesses (see, People v Rosario, 9 N.Y.2d 286, rearg denied 9 N.Y.2d 908, cert denied 368 US 866).
After the jury returned its guilty verdict but before sentencing, a police officer's memo book possibly containing statements made by the complainant and his mother, both of whom testified at trial, was delivered to defense counsel. Defendant's lawyer reviewed the single page to see if it was potentially relevant and declared that it would have been of no evidentiary use or value. Specifically, defense counsel stated on the record that "there is absolutely nothing in the memo book that would have made any difference in terms of what I did or did not do, ask or did not ask and that's about it." There was no acknowledgement that it even technically qualified as Rosario material.
Defendant now argues that he was deprived of effective assistance of counsel (see, US Const 6th, 14th Amends; NY Const, art I, § 6), concentrating essentially on a claim that his trial attorney's evaluation and representation was per se "meaningless" because counsel gave away an allegedly surefire new trial, Rosario reversal.
The intellectually disciplined dispositional path of this case must not veer from this Court's long-standing, well-settled ineffective assistance of counsel analysis and authorities. In People v Baldi (54 N.Y.2d 137), this Court held that when reviewing a claim of ineffective assistance of counsel, care should be taken "to avoid both confusing true ineffectiveness [of counsel] with mere losing tactics and according undue significance to retrospective analysis" (id., at 146 [emphasis *187 added]). The constitutional requirement of effective assistance of counsel will be satisfied when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (id., at 147 [emphasis added]; see also, People v Satterfield, 66 N.Y.2d 796, 798-800). This protection does not guarantee a perfect trial, but assures the defendant a fair trial (see, People v Claudio, 83 N.Y.2d 76, 80, citing United States v Cronic, 466 US 648, 658). To prevail on a claim of ineffective assistance, defendants must demonstrate that they were deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice (see, People v Benn, 68 N.Y.2d 941, 942).
This defendant received a fair trial and was not denied his constitutional right to effective assistance of counsel. The totality of representation examined as of the time of representation, not retrospectively second-guessed four years later, supports this elementary conclusion. Moreover, the attorney's decision not to press for a new trial at the postverdict stage of the criminal proceeding  assuming without having to decide in this case that a new trial was then procedurally and meritwise available  based on a possible Rosario appellate point of argument, is another aspect of the attorney's role at the trial level which fits distinctively within the very heart of the Rosario rule. Judge Fuld articulated that rule as a "right sense of justice" requiring defense counsels' personal examination to "determine for themselves" whether a document may be helpful for cross-examination purposes (People v Rosario, 9 N.Y.2d 286, 289, supra [emphasis added]; see, People v Ranghelle, 69 N.Y.2d 56, 62). The Court emphasized this shift in focus and responsibility from the courts to defense attorneys preeminently because the nuances, features and scope of cross-examination "are certainly not as apparent to the impartial presiding judge as to single-minded counsel for the accused" (People v Rosario, supra, at 290). Defense counsel in this case got eventually to do precisely what Rosario directed. Neither the preverdict conduct of defense counsel nor his on-the-record evaluation and explanation prior to sentencing rise to the level of "egregious and prejudicial" conduct, especially since there can be no certainty at this juncture that a new trial was an available remedy at those stages of the trial proceedings, measured by the totality-of-meaningful-representation standard *188 necessary to prevail on an ineffective assistance of counsel claim.
For all this record reveals about defense counsel's ultimate evaluation of the disclosed item, on the scene and in the circumstances at that postverdict stage of the criminal proceeding, defense counsel could have reasonably considered that his client's interest would best be served by no further delay in the resolution of the case against the client. Any number of other professional strategic reasons or personal considerations affecting the defendant's fair trial interests could also have informed the attorney's professional evaluation and choice on how and why to proceed in the way chosen. The record does emphatically inform us, even as an appellate court reviewing the matter, of the defense lawyer's assessment of the quality and nature of the ultimately disclosed item  "absolutely" useless. A plausible strategy might even have included advocacy for amelioration of sentence or some other nuanced advantage in the adversarial exchanges and context, all matters and features not knowable by trial or appellate Judges removed from the full range of choices and context exercised singularly by the trial lawyer for the defendant. In sum, Rosario was designed to insure that defense counsel, not Judges, should do the strategic viewing, weighing and exercising of the defendant's fair trial advocacy interests in this regard (see, People v Rosario, 9 N.Y.2d 286, 290, supra).
Even less persuasively, the rationale of the dissent proposes to establish a new New York analytic framework that an "unexplained error" by counsel is sufficient, by itself, to deprive defendant of effective assistance (dissenting opn, at 192). This Court has steadfastly and wisely adhered to an analytical approach and rule requiring all the evidence to be weighed in context and as of the time of complete representation at the trial level for resolving ineffective assistance of counsel claims (see, People v Baldi, 54 N.Y.2d 137, 147, supra; see also, People v Rivera, 71 N.Y.2d 705, 708, citing People v Droz, 39 N.Y.2d 457). A substantial, single "blunder" could, of course, qualify, but that is not this case and that ought not be the newest per se orthodoxy. The dissent's reliance on Murray v Carrier (477 US 478) does not change our analysis. In Murray (supra, at 496), the Supreme Court stated that an isolated error of counsel can constitute ineffective assistance of counsel but only "if that error is sufficiently egregious and prejudicial," i.e., that error was so serious that defendant did not *189 receive a "fair trial" (see, People v Claudio, 83 N.Y.2d 76, 80, supra, citing United States v Cronic, 466 US 648, 655, supra).
In that context, this record further demonstrates that defense counsel represented his client diligently and vigorously during the course of the entire trial. Counsel exhaustively cross-examined the People's witnesses and delivered opening and closing statements that were consistent with defendant's defense (see, e.g., People v Hood, 62 N.Y.2d 863, 865). Further, counsel was successful in having several counts of an extremely serious multiple count indictment dismissed. Indeed, the record shows that counsel exercised a single-minded devotion to his client's best interests and representation. Thus, when viewed in its totality as of the time of trial, the attorney's professional services at trial did not deprive this defendant of "meaningful representation" (People v Baldi, 54 N.Y.2d 137, 146-147, supra). Facile hindsight or mere difference of view or approach with an exercise of professional judgment by defense counsel do not translate automatically into ineffective assistance of counsel qualifying as the denial of a fair trial. In the end, defendant has simply failed to satisfy the well-settled, high burden of showing that he was deprived of a fair trial and meaningful representation sufficient to warrant a reversal. We agree with the Appellate Division's unanimous observation that:
"When counsel candidly denies having any use for the material when it is finally disclosed, it cannot be said that the defendant has any substantive right to be vindicated, and there is no basis in law or logic to order a new trial when there is no new issue to be tried. There is no basis in the record to controvert counsel's conclusions, and neither can counsel's representation be deemed incompetent merely because he did not pursue a concededly frivolous substantive claim as a basis for a new trial" (194 AD2d 439).
Therefore, we, too, conclude that no justification has been advanced justifying a new trial, to pursue anew a line of inquiry defense counsel evaluated and declared "absolutely" meaningless and valueless (see, People v Claudio, 83 N.Y.2d 76, 80, supra).
Accordingly, the order of the Appellate Division should be affirmed.
TITONE, J. (dissenting).
I cast my vote to reverse and order a *190 new trial, thereby affording defendant the benefit he would have had if his attorney had not inexplicably waived the per se Rosario remedy to which he was clearly entitled under this Court's precedents (see, e.g., People v Jones, 70 N.Y.2d 547).[1]
The majority's decision to reject defendant's present argument that he was denied the effective assistance of counsel rests on its assertion that counsel might have had some strategic reason for failing to seek the new trial to which his client was unquestionably entitled. However, given the advancement of the client's penal interests as the appropriate yardstick, it is difficult to discern a valid "strategic" advantage that this defendant, who had already been convicted of four counts of first degree sodomy, would have enjoyed by forgoing the new trial that would surely have followed from a properly made CPL 330.30 motion to set aside the verdict. Moreover, even if a theoretical "strategic" benefit for waiving defendant's rights at the postverdict, prejudgment stage could be articulated, there could be no conceivable "strategic" reason for a defense attorney to volunteer for the record his own opinion that the prosecution's Rosario violation had not led to any palpable prejudice. In opting to speak out rather than simply refraining from moving to set aside the verdict under CPL 330.30, defendant's trial counsel affirmatively foreclosed the possibility of obtaining relief at some future point (see, People v Jackson, 78 N.Y.2d 638, supra). Whatever justification may have existed in counsel's mind for waiving an indisputably meritorious Rosario claim at that point in the proceedings, no similar justification could exist for counsel's entirely separate choice to make observations that could only redound *191 to his client's detriment (see, People v Bell, 48 N.Y.2d 933; cf., People v Baldi, 54 N.Y.2d 137).
The majority speculates about the existence of "[a]ny number of * * * professional strategic reasons or personal considerations affecting defendant's fair trial interests" (majority opn, at 188). The Court refers to "advocacy for amelioration of sentence" as a "plausible strategy," (majority opn, at 188) but does not explain how forgoing a legitimate motion to set aside the verdict for Rosario error could possibly advance that goal. The only other specific "strategic" consideration that is offered is that counsel "could have reasonably considered that his client's interest would best be served by no further delay in the resolution of the case" (majority opn, at 188). In other words, the Court is now prepared to accept as "reasonable" representation, a decision by defense counsel to handle the case in such a way as to assure his or her client swift and certain punishment. Manifestly, if that rationale can be invoked to explain an otherwise inexplicable act by defense counsel, there would be little professional misconduct left that could ever be considered "ineffective assistance."
Although we may have gone a long way in the direction of tolerating apparent professional blunders in the name of "trial strategy," even that doctrine must have some limits. And, those limits, to the extent they exist, must be measured by reference to our basic assumptions about an attorney's role in an adversary system. These assumptions include the fundamental supposition that a criminal defense attorney will do whatever is necessary and appropriate  within the law's confines  to help the client to avoid an unfavorable adjudication or to escape punishment (see, Code of Professional Responsibility, Canon 7, DR 7-101; EC 7-1). While there may be anomalous individual situations in which a client prefers prompt punishment for some personal reason, those situations are rare and atypical. They certainly cannot be used as a fair basis for presuming that a particular attorney's wholly self-defeating acts were the product of a deliberate strategic choice.
If the rule requiring the "effective assistance" of counsel at trial is to have any meaning at all, it must be premised on the notion that, in most cases, the attorney's aim is to defeat the People's charges or at least to minimize the client's exposure to incarceration. Any action  or inaction  that could conceivably advance those goals can arguably be deemed "trial strategy." *192 Delivering up one's client for incarceration sooner rather than later  with no concrete advantage discernible  obviously does not fall within that category.
Significantly, even the Appellate Division did not attempt to invoke the "trial strategy" analysis the majority has used in order to rationalize its decision to affirm. Instead, the Appellate Division relied on its own sense that defendant should not be afforded a new trial when, according to his counsel's "candid" statement, defendant had no "substantive right to be vindicated" (194 AD2d 439). Manifestly, that rationale is equally infirm, since it overlooks that, in view of the prosecution's belated Rosario disclosure, defendant had a substantive right to a new trial without regard to any hindsight estimate of what value the undisclosed material might have had (see, People v Jones, supra).
In truth, there is no legally or logically cognizable basis in this case for concluding that defendant received the effective assistance of counsel to which he was entitled. While defense counsel may have otherwise conducted an unobjectionable defense, counsel's unexplained error in waiving defendant's winning Rosario claim and thereby depriving him of a second chance at acquittal was so egregious and unquestionably prejudicial as to constitute a denial of effective assistance in itself. Although an ineffective-assistance-of-counsel claim must be "weighed in context and as of the time of complete representation at the trial level" as the majority notes (majority opn, at 188), that does not  and, in fact, cannot  mean that a single error by counsel can never alone form the basis of a valid ineffective-assistance claim (see, Murray v Carrier, 477 US 478, 496 [even an isolated error can constitute ineffective assistance]).[2]
Here, defendant had nothing to lose and everything to gain by objecting to the prosecution's Rosario violation and demanding *193 a new trial without regard to the actual prejudice that that violation had caused. Counsel's failure to obtain that benefit for his client cannot be reconciled with his duty to provide informed and zealous representation. Accordingly, I dissent from the majority's decision to affirm the judgment of conviction.
Order affirmed.
NOTES
[1] The majority hints at some change in the law, noting that there is some question in its mind as to whether a new trial "was * * * procedurally and merit-wise available" (majority opn, at 187). Since there is no doubt that the failure to disclose Rosario material is per se reversible error when the disclosure occurs after the close of evidence (see, People v Jackson, 78 N.Y.2d 638, 649; People v Jones, 70 N.Y.2d 547; cf., People v Ranghelle, 69 N.Y.2d 56), I can only assume that the majority's reservation concerns the question whether a motion to set aside a verdict under CPL 330.30 (1) is a proper vehicle for asserting a Rosario claim discovered after announcement of verdict. I would note, however, that any conclusion by this Court that CPL 330.30 (1) is not available in these circumstances would represent a dramatic change in the law (see, e.g., People v Kanefsky, 50 N.Y.2d 162; People v Wright, 197 AD2d 398; see also, People v Jackson, supra, at 658 [Titone, J., dissenting]). Thus, the possibility that some of the members of this Court might, in the future, arrive at such a conclusion has no bearing on whether defense counsel here acted competently "as of the time of * * * representation at the trial level" (majority opn, at 188).
[2] The majority notes that defense counsel sought no particular relief during trial based upon the undisclosed Rosario material. Inasmuch as this appeal concerns the effectiveness of trial counsel's performance at trial, it is difficult to discern what legal significance can logically be ascribed to counsel's purported silence. In any event, for the sake of clarity, it must be noted that there were extensive discussions about the undisclosed Rosario material during trial. Further, the trial court itself made it clear that, in its view, a continued failure by the prosecutor to comply would lead to a reversal of any jury determination. The trial court's comments on the subject, including its statement that it would "have [defense counsel] preserve his exceptions for the record with respect to th[e] memo book," made further action by defense counsel unnecessary.