[630 NYS2d 755]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MIGUEL DEFREITAS, Appellant.

Second Department, August 14, 1995

**APPEARANCES OF COUNSEL**

*Matthew Muraskin,* Hempstead *(Kent V. Moston, David A. MacDonald* and *Judah Serfaty* of counsel), for appellant.

*Denis Dillon, District Attorney* of Nassau County, Mineola *(Karen Wigle Weiss, Andrea M. DiGregorio* and *Denise Pavlides* of counsel), for respondent.

**OPINION OF THE COURT**

ROSENBLATT, J. P.

In the case before us, we are called upon to weigh the defendant's claim of ineffective assistance of trial counsel. We hold that he was provided with meaningful representation. In so holding, we reject any suggestion that the defendant's attorney, in order to fulfill that standard, was obligated to present defenses or to make assertions that in the case before us would have been baseless, spurious, or unethical.

## I

The proof established that the police interrupted the defendant while he was committing an armed robbery at a jewelry store in Hewlett (Nassau County), New York. The defendant had handcuffed the store owner and an employee to each other after threatening them with a gun and a knife. Two uniformed officers responded to a silent alarm and saw the defendant inside the store. When confronted, the defendant assumed a two-handed firing position and tried to shoot one of the officers in the chest with a loaded semiautomatic pistol, pulling the trigger twice at point-blank range. The gun misfired. The defendant then took the owner and employee hostage and used them as a human shield to make his way out of the store. Displaying his gun, the defendant commandeered an automobile after struggling with its owner, and drove off, hitting the owner with the driver's side door. Another officer who had seen the defendant physically overcome the car owner gave chase for about a mile. Traveling at what the officer estimated to be about 100 miles per hour, the defendant entered a congested intersection, drove over the center divider, and crashed into a car that was stopped at a traffic light. The defendant then ran away on foot and the officer caught up with the defendant, who dropped a gun clip, and surrendered. The officer then went to the car and retrieved the gun. From the moment he spotted the defendant, until he arrested

him, the police officer never lost sight of the defendant. When searched, the defendant had a business card from the jewelry store and the stolen, loose diamonds in his left pants pocket. The store victims immediately identified the defendant, and the crime scene unit discovered, among other things, an unfired "live round" that displayed a "light hit", i.e., a slight depression on its primer, which, according to firearms testimony, indicated that it had been in a weapon which had had its trigger pulled but did not fire that bullet.

The defense trial counsel's failure to request a charge of attempted assault in the second degree, as a lesser included offense of attempted murder in the first degree, does not, singly or in conjunction with other claimed errors, amount to ineffective assistance of counsel. The proof established that the defendant levelled a semiautomatic pistol at the officer's chest, and from a distance of one foot pulled the trigger twice. Inasmuch as the trial court would have ruled properly in determining that there was no reasonable view of the evidence to support a submission of attempted assault in the second degree *(see, People v Burke,* 73 AD2d 627), the failure of the defense counsel to ask for the lesser included charge does not amount to an absence of meaningful representation.

Further, we find no ineffectiveness in the defense counsel's decision not to request that the *Huntley* hearing be reopened to determine the voluntariness of defendant's statement as to his age *(see, People v Rodriquez,* 39 NY2d 976, 978), considering also that the hearing court had found the inculpatory statement voluntary and admissible.

## II

The appellant complains that his trial counsel "never asserted that the 'wrong man' was arrested". He acknowledges that trial counsel challenged the police work as sloppy, but assails him for failing to claim "a police frame-up of the appellant".

Under the facts of this case, meaningful, effective representation was not compatible with any tenable claim that the defendant was the wrong man, or that he was framed. Under our State and Federal Constitutions *(see,* US Const 6th Amend; NY Const, art I, § 6) an accused has the right to effective assistance of counsel. For purposes of Sixth Amendment Federal law the test is whether the attorney rendered "reasonably effective assistance" to the defendant *(Strickland*

*v Washington,* 466 US 668, 687), a formulation that was derived from an earlier, similar standard of reasonable competence *(see, McMann v Richardson,* 397 US 759, 771). The standard addresses whether the defense counsel's professional errors were so serious as to result in an unfair trial, with an unreliable result *(see, Lockhart v Fretwell,* 506 US 364, 368). In New York the courts had proceeded under a standard by which a constitutional deprivation occurred when counsel's performance was such as to render the trial a "farce and a mockery of justice" *(People v Brown,* 7 NY2d 359, 361, *cert denied* 365 US 821). Over the next 35 years, the Court of Appeals refined the test, measuring whether the counsel's representation "was adequate or effective in any meaningful sense of the words" *(People v Droz,* 39 NY2d 457, 463), and, in *People v Aiken* (45 NY2d 394, 398), spoke of a "flexible framework within which to ensure a defendant's right to receive effective legal representation". In *People v Baldi* (54 NY2d 137, 146-147), the Court of Appeals ratified the present test as requiring "meaningful representation"—a more searching inquiry than the "farce and mockery" standard (Wolfram, Modern Legal Ethics, at 815 [Practitioner's ed 1986])—and one that will be satisfied "when 'the evidence, the law, and the circumstances of a particular case, viewed in *totality and as of the time of the representation,* reveal that the attorney provided meaningful representation' " *(People v Flores,* 84 NY2d 184, 187, quoting *People v Baldi, supra,* at 147).

The rationale behind these concerns is our recognition that if these commands are to have meaning, they must be carried out in a way that guarantees faithful and devoted service as a prized tradition of the American lawyer, in contemplation of the Sixth Amendment *(see, Von Moltke v Gillies,* 332 US 708, 725-726) and our own State Constitution, which demands no less *(see, People v Claudio,* 83 NY2d 76, 79-80).

Accordingly, when the defense counsel's performance was so substandard as to fall short of meaningful representation, both the Court of Appeals and this Court have reversed convictions based on the attorney's unpreparedness or lack of investigation *(see, People v Droz,* 39 NY2d 457, *supra; People v LaBree,* 34 NY2d 257; *People v Bennett,* 29 NY2d 462; *People v Baba-Ali,* 179 AD2d 725). In other instances, we have done so when the defense counsel's failure to take appropriate procedural steps was so serious as to fall below the necessary criterion *(see, People v Sullivan,* 209 AD2d 558; *People v Donovan,* 184 AD2d 654).

In the case before us, the proof of the defendant's involvement was overwhelming. Had the defense counsel attempted to persuade the jury that the defendant was the "wrong man" or that he was "framed", he stood to risk a punishing loss of veracity and respect by advancing a hypothesis that would have been not only implausible, but prejudicial to the defense.[1] We cannot accept the suggestion, implicit in the defendant's argument, that in order to be considered "effective" a defense attorney must cast aside the intelligence of the jury, and in the name of advocacy, and despite its incompatibility with established ethical standards, advance or fabricate any theory, however false or specious it may be.

In weighing constitutional claims of ineffective assistance of counsel in criminal cases, the courts have considered and have invoked ethical standards, recognizing that fidelity to those standards implicates not only the interests of the defendants, but the credibility of the system, its integrity, and the institutional interests in the rendition of just verdicts (see, *Wheat v United States,* 486 US 153, 160). In setting constitutional expectations relative to effectiveness of counsel, the Court, in *People v Aiken* (45 NY2d, *supra,* at 400), held that "[c]ounsel

---

1. To quote the ABA Standards: "It is fundamental that defense counsel must be scrupulously candid and truthful in representations of any matters before a court. This is not only a basic ethical requirement but it is essential if the lawyer is to be effective in the role of advocate, for if the lawyer's reputation for veracity is suspect, he or she will lack the confidence of the court when it is needed most to serve the client" (ABA Standards for Criminal Justice, Prosecution Function and Defense Function, at 124 [3d ed 1993]; *see also,* ABA Model Code of Professional Responsibility DR 7-106 [C] [1]; *see generally,* ABA Standards for Criminal Justice, Prosecution Function and Defense Function, standard 4-1.2 [e], [f] cautioning against intentionally misrepresenting matters of fact or law to the court, or offering false evidence [standard 4-7.5] or intentionally misleading the jury as to inferences to be drawn [standard 4-7.7]; *see also,* ABA Model Code of Professional Responsibility, Canon 7, EC 7-1, DR 7-102, representing a client zealously within the bounds of the law, abjuring knowingly offering false statements or testimony; *see also,* 1 Hazard and Hodes, The Law of Lawyering, Meritorious Claims and Contentions, §§ 3.1:101-3.1:304, at 543-566; Candor Toward the Tribunal, §§ 3.3:101-3.3:501, at 575-619 [2d ed]; Drinker, Legal Ethics, at 69-88, 146 [1953]; Note, *Identifying And Remedying Ineffective Assistance Of Criminal Defense Counsel: A New Look after United States v. Decoster,* 93 Harv L Rev 752, 756-758 [1980]; Papke, The Legal Profession and Its Ethical Responsibilities: A History *in* Davis and Elliston, Ethics and The Legal Profession, at 29 [Prometheus Books 1986].) Much of these teachings stem from one of the first reported treatises on legal ethics in American law, A Compend of Lectures on the Aims and Duties of the Profession of the Law Delivered Before the Law Class of the University of Pennsylvania by George Sharswood (1854).

may be reasonably expected to call upon witnesses to testify on behalf of a defendant *only when such witnesses exist"* (emphasis added; *accord, People v Ford,* 46 NY2d 1021). Further, it has been made clear that the defense counsel's obligation to pursue a particular contention or avenue of defense contemplates that the claim be " 'colorable' " *(People v Garcia,* 75 NY2d 973, 974), and that the advocate's failure to pursue a course of conduct may be legitimately based on the justifiable belief that there is no "colorable" basis to do so *(People v Rivera,* 71 NY2d 705, 709).

In all, we conclude that the defendant's counsel carried out his functions meaningfully. His opening and closing statements, his stance in connection with jurors' notes and at sentencing, and his cross-examination of witnesses were all conducted satisfactorily, as were his actions in interposing objections to questions to witnesses and to the court's charge. Moreover, he made appropriate motions to suppress evidence, and argued, although unsuccessfully, what he characterized as improper and suggestive identification procedures, unlawful acquisition of physical evidence, and the involuntariness of the defendant's statement. He also moved for a trial order of dismissal, protested the reopening of the People's case, and requested that the jury should draw no unfavorable inference owing to the defendant not having testified.

Beyond that, it is evident from the cited holdings that there is no constitutional or statutory right of a defendant to an attorney who will initiate a fabricated defense. A defendant is entitled to an attorney who is free of prejudicial, unethical behavior *(see, People v Gomberg,* 38 NY2d 307; *see also, Cuyler v Sullivan,* 446 US 335), not one who practices it. The Sixth Amendment does not require that counsel do what is unethical or impossible *(see, United States v Cronic,* 466 US 648, 657). Counsel may not be expected to create a defense when it does not exist and thereby "disserve the interests of his client by attempting a useless charade"[2] *(United States v Cronic,*

---

2. " 'Nothing operates more certainly to create or to foster popular prejudice against lawyers as a class, and to deprive the profession of that full measure of public esteem and confidence which belongs to the proper discharge of its duties than does the false claim * * * that it is the duty of the lawyer to do whatever may enable him to succeed in winning his client's case.' ABA Canons of Professional Ethics 15 (1968). 'The duty of a lawyer, both to his client and to the legal system, is to represent his client zealously within the bounds of the law * * *' ABA Model Code of Professional Responsibility EC 7-1. 'The advocate has a duty to use legal procedure for

*supra,* at 656-657, n 19, citing *Nickols v Gagnon,* 454 F2d 467, 472, *cert denied* 408 US 925).

We have considered the defendant's other contentions and find no merit in them. For these reasons the defendant's conviction is affirmed.

RITTER, PIZZUTO and KRAUSMAN, JJ., concur.

Ordered that the judgment is affirmed.

---

the fullest benefit of the client's cause, but also a duty not to abuse legal procedure.' ABA Model Rules of Professional Conduct 3.1, Comment" (ABA Standards for Criminal Justice, Prosecution Function and Defense Function, standard 4-1.2, at 124, n 4).