[994 NE2d 820, 971 NYS2d 729]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAY J. BARBONI, Appellant.

Argued April 25, 2013; decided June 11, 2013

**POINTS OF COUNSEL**

*Davison Law Office PLLC*, Canandaigua (*Mary P. Davison* of counsel), for appellant. I. The conviction of murder in the second degree was not based on legally sufficient evidence that Jay J. Barboni acted with depraved indifference to human life. (*People v Danielson*, 9 NY3d 342; *People v Poplis*, 30 NY2d 85; *People v Register*, 60 NY2d 270; *People v Gonzalez*, 1 NY3d 464; *People v Payne*, 3 NY3d 266; *People v Suarez*, 6 NY3d 202; *People v Feingold*, 7 NY3d 288; *People v Matos*, 19 NY3d 470; *People v Lewie*, 17 NY3d 348; *People v Bussey*, 19 NY3d 231.) II. The conviction of manslaughter in the first degree was not based on legally sufficient evidence that Mr. Barboni acted with intent to cause physical injury. (*People v Hayes*, 163 AD2d 165, 78 NY2d 876; *People v Lilly*, 71 AD2d 393; *People v Maddox*, 31 AD3d 970, 7 NY3d 868; *People v McLain*, 80 AD3d 992, 16 NY3d 897; *People v Heslop*, 48 AD3d 190; *People v Varmette*, 70 AD3d 1167, 14 NY3d 845; *People v Manos*, 73 AD3d 1333, 15 NY3d 807; *People*

v Griffin, 48 AD3d 1233, 10 NY3d 840; *People v Bowman*, 48 AD3d 178, 10 NY3d 808; *People v Jeffries*, 56 AD3d 1166, 12 NY3d 759.) III. Mr. Barboni was denied his right to a fair trial under the Federal and State Constitutions, based on his attorney's failure to request removal of a juror who stated that he was biased in favor of police witnesses. (*People v Rodriguez*, 71 NY2d 214; *People v Buford*, 69 NY2d 290; *Morgan v Illinois*, 504 US 719; *People v Blyden*, 55 NY2d 73; *People v Biondo*, 41 NY2d 483, 434 US 928; *People v Butler*, 221 AD2d 918; *People v Johnson*, 17 NY3d 752; *United States v Cronic*, 466 US 648; *People v Claudio*, 83 NY2d 76; *People v Benevento*, 91 NY2d 708.) IV. The trial court erred in denying suppression of physical evidence seized in violation of Mr. Barboni's right to counsel. (*People v Yukl*, 25 NY2d 585; *People v Lopez*, 16 NY3d 375; *People v West*, 81 NY2d 370; *People v Carranza*, 3 NY3d 729; *People v Rogers*, 48 NY2d 167; *People v Claudio*, 83 NY2d 76; *People v Burdo*, 91 NY2d 146; *Montejo v Louisiana*, 556 US 778; *Hurrell-Harring v State of New York*, 15 NY3d 8; *United States v Gonzalez-Lopez*, 548 US 140.)

*Gregory S. Oakes, District Attorney*, Oswego, for respondent. I. This Court should affirm the conviction for murder in the second degree since the jury heard legally sufficient evidence to support every element of the offense, including that defendant acted with the culpable mental state of depraved indifference. (*People v Danielson*, 9 NY3d 342; *People v Contes*, 60 NY2d 620; *People v Hafeez*, 100 NY2d 253; *People v Maddox*, 31 AD3d 970, 7 NY3d 868; *People v Gallagher*, 69 NY2d 525; *People v Payne*, 3 NY3d 266; *People v Suarez*, 6 NY3d 202; *People v Baker*, 14 NY3d 266; *People v Trappier*, 87 NY2d 55; *People v Griffin*, 48 AD3d 1233, 10 NY3d 840.) II. This Court should affirm the conviction for manslaughter in the first degree since the jury heard legally sufficient evidence that defendant intended to cause injury to the victim. (*People v Baker*, 14 NY3d 266; *People v Bueno*, 18 NY3d 160; *People v Steinberg*, 79 NY2d 673; *People v Hayes*, 163 AD2d 165; *People v Hines*, 97 NY2d 56, 678; *People v Williams*, 84 NY2d 925; *People v Stokes*, 28 AD3d 1094, 7 NY3d 795, 7 NY3d 870; *People v McLain*, 80 AD3d 992.) III. Trial counsel's strategic decision to keep prospective juror Randall did not constitute ineffective assistance of counsel or deny defendant his right to a fair trial. (*People v Thomas*, 244 AD2d 271, 91 NY2d 898; *People v Baldi*, 54 NY2d 137; *People v Rivera*, 71 NY2d 705; *People v Martin*, 79 AD3d 1793, 16 NY3d 861; *People v Colon*, 90 NY2d 824; *People v Montana*, 71 NY2d 705; *People v Evans*, 232 AD2d 170, 89 NY2d 863; *People v Vilfort*, 33

AD3d 368, 7 NY3d 929; *People v Rivera*, 45 AD3d 1249, 10 NY3d 770; *People v Ostas*, 179 AD2d 893, 80 NY2d 932.) IV. The trial court properly denied defendant's motion to suppress physical evidence based upon the grounds presented by trial counsel. Further, this Court should deny defendant's request to suppress physical evidence because (i) there is no constitutional right to effective representation during the pre-accusatory state of an investigation, (ii) defendant received meaningful representation, and (iii) suppression of physical evidence is not the appropriate remedy to address ineffective assistance of counsel. (*People v Farrell*, 42 AD3d 954; *People v Beam*, 57 NY2d 241; *People v Claudio*, 83 NY2d 76; *People v Burdo*, 91 NY2d 146; *Mickens v Taylor*, 535 US 162; *United States v Gonzalez-Lopez*, 548 US 140; *Kansas v Ventris*, 556 US 586; *People v Rivera*, 71 NY2d 705; *People v Martin*, 79 AD3d 1793; *People v Guilford*, 96 AD3d 1375.)

**OPINION OF THE COURT**

PIGOTT, J.

On this appeal, we are called upon to address the impact of this Court's recent jurisprudence concerning depraved indifference to human life, where defendant is accused of repeatedly striking a victim less than 11 years old and failing to summon medical assistance before the child dies. In this case we hold that there was sufficient evidence to convict defendant of depraved indifference murder as well as first-degree manslaughter. We also conclude that County Court committed no reversible error and that defendant's right to effective assistance of counsel was not violated.

## I.

The facts pertinent to this appeal are as follows. Shortly after 8 p.m. on August 18, 2008, the mother of a 15-month-old boy received a telephone call from her boyfriend, defendant Barboni. Barboni, who had been alone with the child since around 4:45 p.m., told her, in what was described as a calm tone of voice, that she needed to come home because the child was not breathing. The mother rushed home to find her son in his crib, badly bruised, and unconscious. Defendant denied knowing what had happened. The child was pronounced dead at a nearby hospital shortly thereafter.

Defendant was interviewed that night at the police station. He had no explanation for the child's death, and could not

account for reddish stains that the police observed on his clothing. At approximately 1:20 a.m., an attorney called the police station, and questioning stopped. The attorney spoke with defendant, and then with the investigator, who asked for defendant's clothes. Both the attorney and defendant consented, and the clothing was then subjected to forensic analysis.

Defendant was arrested and charged with murder in the second degree (Penal Law § 125.25 [4]) and manslaughter in the first and second degrees (Penal Law §§ 125.20 [4]; 125.15 [1]). As part of his omnibus motion, submitted by new defense counsel, defendant sought suppression of the clothing taken from him at the station house, arguing that the seizure violated his right to counsel. Following a hearing, County Court denied the motion, reasoning that the police legitimately concluded that defendant was acting on the advice of counsel when he consented to the seizure of his clothing. Defendant then proceeded to a jury trial in County Court.

## II.

During voir dire, one prospective juror indicated that he was unsure whether he would apply a different, more favorable standard with respect to the credibility of testimony by police officers when it directly conflicted with civilian testimony. Neither the prosecution nor the defense challenged this prospective juror for cause. When County Court asked the attorneys to state their peremptory challenges, defense counsel displayed a moment's uncertainty concerning whether this prospective juror had already been challenged. Informed that he was still unchallenged, counsel said, "Then we are fine . . . we are going to keep him. I'm sorry, I got my people mixed up." County Court reminded counsel that the prospective juror was the one who "was unsure." "I know that," counsel responded, "I wanted to keep him. I just confused myself." The prospective juror was seated and served throughout the trial.

At trial, the jury heard evidence from three police officers regarding their questioning of defendant and his inability to explain the stains on his clothing. Forensic scientists testified that the stains on defendant's clothing were positive for blood, and that the blood matched the child's DNA.

The jury heard extensive testimony concerning the autopsy. A medical examiner testified that the child had approximately 25 "fresh" injuries, including two "clusters" of injuries to the face. The child had suffered four distinct skull fractures. The

examiner opined that the child's injuries had been caused by "blunt force trauma," involving a minimum of "five strikes" or "impacts."

An ocular pathologist, who had examined the child's eyes during a postmortem examination, testified that his eye injuries were consistent with "vigorous shaking with or without impact." Significantly, a neuropathologist, who had examined the child's brain and spinal cord, opined that he had survived for approximately two hours following onset of the trauma.

The defense called a pediatrician, who was unable to give a precise time as to when the injuries had occurred, but testified that a neuropathologist would be in a better position to do so. The pediatrician opined that signs of the child's extensive bruising would have been recognizable "[w]ithin a half hour" of the traumatic injury, and that he would have been in a substantial amount of pain and probably crying, screaming, or else "lethargic."

Finally, an anatomic pathologist was called by the defense. He opined that the interval between the child's injuries and death was at least two hours; like the pediatrician, he testified that a neuropathologist would be in a better position to give an estimate.

Defendant moved, unsuccessfully, for a trial order of dismissal on all counts. With respect to depraved indifference murder, defense counsel claimed that the People were obliged, but had failed, to prove "that the child was . . . likely to die or that the attack was prolonged." He also argued that, if there was sufficient evidence of any type of murder, it could not be depraved indifference murder, because defendant's conduct was "in essence, intentional, not reckless."

Following deliberations, the jury found defendant guilty of one count each of murder in the second degree (Penal Law § 125.25 [4] [depraved indifference murder of a child]) and manslaughter in the first degree (Penal Law § 125.20 [4] [intent to cause child physical injury; recklessly causes child's death]).

### III.

Defendant appealed the judgment of conviction, alleging insufficiency of the evidence on both counts, ineffective assistance of counsel, and error as to the suppression motion. The Appellate Division affirmed, holding that the evidence was legally sufficient to establish the mens rea elements necessary for

depraved indifference murder, noting that "the child's suffering yielded an apathetic response from defendant," who "did not seek medical assistance for him" (90 AD3d 1548, 1549 [4th Dept 2011]). It also ruled that there was legally sufficient evidence to support the first-degree manslaughter conviction. As to the claimed ineffective assistance of trial counsel, the Court held that defendant had failed to establish the absence of a legitimate explanation for defense counsel's alleged error during jury selection. Finally, as to suppression of defendant's clothing, the Court determined that there was no error, because defendant and his then attorney had consented to the seizure. Moreover, defendant had not been denied effective assistance of counsel during his questioning by the police.

A Judge of this Court granted defendant leave to appeal. We now affirm.

## IV.

A person is guilty of depraved indifference murder of a child, under Penal Law § 125.25 (4), when "[u]nder circumstances evincing a depraved indifference to human life, and being eighteen years old or more the defendant recklessly engages in conduct which creates a grave risk of serious physical injury or death to another person less than eleven years old and thereby causes the death of such person." Defendant argues that the evidence was legally insufficient to establish circumstances evincing a depraved indifference to human life or that he recklessly engaged in conduct that created a grave risk of death or serious physical injury to the child.

■ ■ This appeal is governed by the requirement that, in proving the existence of "circumstances evincing a depraved indifference to human life," the People must show that, at the time the crime occurred, defendant had a mens rea of "utter disregard for the value of human life" (*People v Feingold*, 7 NY3d 288, 296 [2006], quoting *People v Suarez*, 6 NY3d 202, 214 [2005]). Put simply, the People must prove that defendant did not care whether his victim lived or died (*see People v Matos*, 19 NY3d 470, 476 [2012]; *People v Lewie*, 17 NY3d 348, 360 [2011]; *Feingold*, 7 NY3d at 296). Additionally, the People must prove a second mens rea, namely recklessness. Under Penal Law § 125.25 (4), this element is recklessness as to a grave risk of serious physical injury or death.

In two recent cases, which, like this one, involved a very young victim, this Court held that the evidence was insufficient to

prove the mens rea of wanton indifference. The first of those cases was *People v Lewie*, where we vacated a conviction for reckless endangerment in the first degree (Penal Law § 120.25), which contains the same two mens rea elements as depraved indifference murder. Lewie persistently left her eight-month-old son alone with her boyfriend, whom she knew to be violent and cruel, and the man inflicted numerous injuries on the child, finally causing a brain injury that led to his death. We reasoned that the evidence was insufficient to support the conclusion that Lewie "did not care at all" about her child's safety (*Lewie*, 17 NY3d at 359).

> "On the contrary, the evidence shows that defendant feared the worst and . . . hoped for the best. A witness . . . testified that defendant seemed 'worried,' and no witness's testimony points to a contrary finding. . . . [Defendant's] statement that she 'was scared' and 'never knew what she was going to go home to' shows that she was fearful of harm to her baby, not that she was indifferent to the possibility" (*id.*).

Then, in *People v Matos* (19 NY3d 470 [2012]), this Court dismissed a depraved indifference murder count against a woman whose intimate partner severely beat her 23-month-old son, resulting in his death. The Court held that "the People failed to prove that [the mother] did not care whether her son lived or died" (19 NY3d at 476), given the evidence that she splinted her son's leg, gave him anti-inflammatory medication, exhibited other measures to comfort him, and, when she found him bleeding and unresponsive, called 911 for help.

Defendant concedes that his case is factually distinct from *Lewie* and *Matos* in that his indictment required the jury to find that he was the actor who had inflicted the injuries that resulted in the child's death. But this difference, he argues, should not alter the analysis; the evidence was insufficient to establish the mens rea of depraved indifference in his case, just as it was lacking in *Lewie* and *Matos*. We disagree.

Here, viewing the evidence in the light most favorable to the People, as we must, the jury heard testimony—including medical and forensic proof—that defendant inflicted injuries on a 15-month-old child by striking or shaking the child so brutally as to cause four distinct skull fractures. The nature of defendant's assault on the child rendered his course of conduct more clearly depraved than had he only suspected that a third party had

injured the child. Knowing the brutal origin of the injuries and the force with which they were inflicted makes it much less likely that defendant was holding out hope, as Lewie and Matos perhaps were, that the child's symptoms were merely signs of a trivial injury or illness. Thus, contrary to defendant's contention, it is significant that defendant was the actor who had inflicted the injuries in the first place.

Defendant also argues that the People did not prove that his state of mind at the time that the child was injured was one of depraved indifference to human life. He argues that it is, for example, consistent with the evidence presented that he experienced a fit of rage in which he repeatedly struck the child. In such a scenario, his state of mind might better be described as blind anger, rather than wanton indifference. However, the charge of depraved indifference murder here is comprised of more than the physical assault on the child; it also encompasses defendant's inaction for the two hours that elapsed between the injuries and death. In light of the child's vulnerability and utter dependence on a caregiver, defendant's post-assault failure to treat the child or report his obvious injuries must be considered in assessing whether depraved indifference was shown. The People demonstrated that defendant, at the very least, left the child unattended for two hours, either disregarding, or not bothering to look for, obvious, perceptible signs that the child was seriously injured. Given defendant's knowledge of how the injuries were inflicted and his failure to seek immediate medical attention, either directly or via consultation with his girlfriend, until it was too late, there was sufficient evidence for a jury to conclude that defendant evinced a wanton and uncaring state of mind. His dispassionate voice on the telephone, reporting that the child was not breathing, is further, albeit circumstantial, evidence of this callous indifference to the child's life.

Defendant further contends that insufficient evidence was presented to support the prosecution's theory that he "engaged in a brutal and prolonged and ultimately fatal course of conduct" against the child. He contrasts his own actions with those underlying *People v Best* (85 NY2d 826 [1995] [defendant repeatedly beat her nine-year-old son, inflicting large open wounds through which bacteria entered, eventually causing his death]) and *People v Poplis* (30 NY2d 85 [1972] [defendant caused the death of a 3½-year-old child by repeatedly beating her over a course of several days]). Defendant points out that the evidence presented in this case, in contrast to those, is consistent with an attack that was of short duration.

The language of the prosecution theory originates in this Court's decision in *Suarez* (6 NY3d at 212). There, the Court set out the "few rare circumstances" in which a defendant may be convicted of depraved indifference murder based on conduct that endangers only one person. The Court outlined two recurring fact patterns—"abandon[ing] a helpless and vulnerable victim in circumstances where the victim is highly likely to die" and "engag[ing] in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (*id.* at 212). However, the Court, in noting the existence of "other extraordinary cases" (*id.* at 213), accepted that these fact patterns did not constitute an exhaustive list of situations in which a defendant may properly be convicted of depraved indifference murder based on a one-on-one killing.[1] The standard is whether the People have shown that defendant's state of mind was one of utter disregard for the value of human life. Here, the People met this standard because the horrific nature of defendant's assault of the child was clearly intended to be encompassed within the depraved indifference murder of a child statute, and the jury could properly find defendant guilty of that crime even if the murderous acts did not occur over an extended duration.

A brutal course of conduct against a vulnerable victim occurring over a prolonged or extended period of time is more likely to be associated with the mental state of depraved indifference to human life than brutality that is short in duration and is not repeated. This is because the actor had the opportunity to regret his actions and display caring, but failed to take the opportunity. In the present case, defendant argues that his course of conduct against the child was not prolonged. But defendant's argument focuses exclusively on the duration of his physical assault on the child, which may have been brief. However, this argument ignores the evidence that, by his later inaction—his failure, over some two hours, to seek medical attention for the child—defendant

---

**1.** The Court's pronouncements concerning rare fact patterns occurred in the context of the evolution towards *Feingold*; they were well suited to warning prosecutors—accustomed to thinking that "circumstances evincing a depraved indifference to human life" referred to "the factual setting" or "objective circumstances" in which the risk-creating conduct occurred (*People v Register*, 60 NY2d 270, 276, 278 [1983])—that the factual patterns underlying depraved indifference murder were unique and very rare. Now that the Court has made it clear that the depraved indifference element of depraved indifference murder is a mens rea (*see Feingold*), the emphasis on the two fact patterns is perhaps redundant.

turned a brutal assault into a brutal and prolonged course of conduct against a vulnerable victim.[2] There is no requirement in our case law that a violent course of conduct must occur over days or months, in order to be "prolonged."

We conclude that, viewing the facts in a light most favorable to the People, a rational jury could have found beyond a reasonable doubt that defendant's state of mind was one of utter indifference to the value of human life.

## V.

██ Defendant's final challenge specific to his murder conviction is that the evidence was insufficient to prove the second mens rea element of depraved indifference murder of a child: recklessness as to a grave risk of serious physical injury or death. Defendant argues that the evidence, such as the multiple skull fractures inflicted on the child, is consistent only with the conclusion that the person who inflicted the child's injuries "acted intentionally," and therefore a conviction of depraved indifference murder cannot stand. We disagree.

It may be true that the evidence presented to the jury leads inexorably to the conclusion that the perpetrator acted *voluntarily* in his course of conduct against the child. However, it does not show that he *intended* to cause death or serious physical injury, in the sense of having that as a conscious objective or purpose. Defendant did not use a weapon, nor was there any evidence that defendant tried to smother the child—acts that of themselves tend to imply intent to cause death or serious physical injury. The extensive injuries suffered by the child are explicable in light of his tender age and do not in themselves require the conclusion that the perpetrator intended to cause serious physical injury or death. The present case is therefore clearly distinguishable from those in which the Court has had occasion to note that "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder" (*Suarez*, 6 NY3d at 211-212, quoting *People v Payne*, 3 NY3d 266, 272 [2004]).

In short, there was no evidence that would have compelled the jury to infer that defendant's state of mind was one of intent

---

**2.** We agree with the concurring opinion that under *Suarez* "maltreatment of a 'particularly vulnerable victim' is an important factor in deciding whether the statute applies" (concurring op at 410). But we do not agree that an exception to the mens rea requirement of *Feingold* and *Lewie* should be created for "severe, fatal abuse of a young child" (*id.* at 409).

rather than recklessness with respect to the risk of the child's death or serious physical injury. By contrast, the jury could have rationally found beyond a reasonable doubt that defendant consciously disregarded the substantial and unjustifiable risk that death or serious physical injury would result, in a manner that constituted a gross deviation from the standard of conduct that a reasonable person would have observed (*see* Penal Law § 15.05 [3] [definition of "recklessly"]).

## VI.

■ Defendant next argues that the evidence was legally insufficient to prove beyond a reasonable doubt that he had the requisite mens rea of "intent to cause physical injury to a person less than eleven years old," required for conviction of manslaughter in the first degree (Penal Law § 125.20 [4]).

"A jury is entitled to infer that a defendant intended the natural and probable consequences of his acts. The element of intent is rarely proved by an explicit expression of culpability by the perpetrator; and competing inferences to be drawn regarding the defendant's intent, if not unreasonable, are within the exclusive domain of the finders of fact, not to be disturbed" by the Court of Appeals (*People v Bueno*, 18 NY3d 160, 169 [2011] [internal quotation marks, citations, and brackets omitted]). Here, the jury could have rationally inferred that defendant intended to injure the child, because physical injury is the probable consequence of inflicting "blunt force trauma" on a young child. Consequently, the evidence of first-degree manslaughter was sufficient.

## VII.

■ Procedurally, defendant contends that the failure of his trial attorneys to challenge the prospective juror who was unsure whether he would give more weight to a police officer's testimony amounted to ineffective assistance of counsel. He relies on *People v Turner* (5 NY3d 476 [2005]), and claims that trial counsel, though otherwise competent, committed "a single failing" that was "so egregious and prejudicial as to deprive [him] of his constitutional right" to the effective assistance of counsel (*Turner*, 5 NY3d at 480 [internal quotation marks omitted]; *see also e.g. People v Brown*, 17 NY3d 742, 743-744 [2011]).

It is well settled that "[t]o prevail on a claim of ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations

for counsel's failure . . . . Absent such a showing, it will be presumed that counsel acted in a competent manner and exercised professional judgment" (*People v Rivera*, 71 NY2d 705, 709 [1988]). The burden is on the defendant to show that there was no legitimate explanation for defense counsel's alleged error. We must decide whether, "[v]iewed objectively, the transcript and the submissions reveal the existence of a trial strategy that might well have been pursued by a reasonably competent attorney" (*People v Satterfield*, 66 NY2d 796, 799 [1985]).

Defendant points to the fact that defense counsel said on the record that she was "mixed up" and "confused" about whether a prospective juror had been challenged, and he suggests that her failure to challenge therefore cannot have been a matter of strategy. However, the record shows that counsel was only fleetingly confused, in that she thought for a moment that the prospective juror had already been removed, and then quickly regained herself. Counsel then recalled that the prospective juror was one she wished to keep, even though she knew that he had said he was unsure whether he would apply a different standard for judging the credibility of a police officer's testimony, if it conflicted with civilian testimony.

Defendant also argues that there cannot be a legitimate explanation for failing to challenge a prospective juror who is not sure whether he would apply a different standard for the credibility of police officers. We disagree. A defense counsel may legitimately decide not to challenge a prospective juror in such circumstances because the prospective juror is attractive to the defense in other respects, which outweigh his or her willingness to attach more credibility to police officers' testimony when it directly contradicts civilian testimony. This is particularly likely in a case, such as this one, where there was no expectation of a conflict between the police officers' and civilians' testimony, such that defense counsel would seek to undermine police testimony. "The record does not reveal on what basis counsel might have concluded that" the prospective juror was a "desirable juror[ ] for the defense, and that further inquiry was unnecessary. In particular, counsel may have been influenced by the[ ] juror['s] demeanor, which is not reflected in the record" (*People v Vilfort*, 33 AD3d 368, 369 [1st Dept 2006]). Demeanor may include such entirely nonverbal cues as eye contact and posture. In addition, trial counsel may have considered the prospective juror to be beneficial to the defense on the basis of his

jury questionnaire. Importantly, the record does not show a substantial risk that the prospective juror would not properly discharge his responsibilities, nor does it cast doubt on his ability to be fair. In sum, defendant's ineffective assistance argument fails because he does not meet his burden of showing the absence of a legitimate explanation for the perceived error.

## VIII.

■ Finally, defendant argues that County Court erred in denying his motion to suppress the clothing that was seized from him. He frames the argument in terms of ineffective assistance of counsel; County Court, he says, should have granted the motion on the basis that the attorney who consented to the seizure of defendant's clothing was ineffective. Defendant acknowledges our holding in *People v Claudio* (83 NY2d 76 [1993]) that, "except in most unusual circumstances . . . the State is not charged with the responsibility of guaranteeing effective legal representation upon the entry of counsel at the preaccusatory, investigatory stage of a criminal matter, i.e., before the commencement of formal adversarial judicial criminal proceedings" (*id.* at 78), but urges us to overrule *Claudio*.

The present case does not require us to decide whether *Claudio* is still good law, because we agree with the Appellate Division that "[e]ven assuming arguendo, that the right to effective assistance of counsel attached prior to the seizure of the physical evidence in question and that suppression is the appropriate remedy where a seizure arises from ineffective assistance of counsel," defendant "failed to demonstrate the absence of a strategic explanation for that attorney's alleged shortcomings" (90 AD3d at 1550, quoting *People v Carncross*, 14 NY3d 319, 331 [2010] [ellipsis and brackets omitted]).

## IX.

Accordingly, the order of the Appellate Division should be affirmed.

SMITH, J. (concurring). I concur in the result the majority reaches, but not in its reasoning. I do not think this case fits with our depraved indifference jurisprudence as it has developed over the last decade. Rather, I think that a case like this—a severe beating that killed an infant—is a justified, narrow exception to the rule established by our recent cases that a depraved indifference murder conviction cannot be sustained unless a

jury could find, beyond a reasonable doubt, that the defendant was literally indifferent to whether the victim lived or died.

This is the first case since *People v Sanchez* (98 NY2d 373 [2002]) in which we have found the evidence sufficient to support a jury finding of depraved indifference to human life. In the interim, we have found insufficient evidence of depraved indifference in 17 cases,* and have overruled *Sanchez* and *People v Register* (60 NY2d 270 [1983]) (*see People v Feingold*, 7 NY3d 288, 295-296 [2006]). We have decided in three recent cases that neither a brutal, fatal assault (*People v Bussey*, 19 NY3d 231 [2012]) nor a reckless failure to protect or get help for an abused child (*People v Lewie*, 17 NY3d 348 [2011]; *People v Matos*, 19 NY3d 470 [2012]) is proof of depraved indifference.

This case is different from those three because in *Bussey* the victim was an adult, and in *Lewie* and *Matos* the defendants were not the people who physically abused the children. I agree with the majority that these differences justify a difference in result. While Bussey, Lewie and Matos were guilty of "shocking behavior [which] in ordinary speech people might call . . . 'depraved' " (*Lewie*, 17 NY3d at 359), the depravity in a crime like this is of a different order. An assault against a young child is immeasurably worse than an assault against an adult, both because the child is so much more vulnerable and because the child could have done nothing to provoke the offense. And the offender who actually beats the child commits a much worse offense than one who only fails to prevent the beating or to forestall its consequences. If ever there was conduct

> "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another"

(*People v Suarez*, 6 NY3d 202, 211 [2005], quoting earlier cases), the conduct of this defendant is it.

---

* *People v Hafeez*, 100 NY2d 253 (2003); *People v Gonzalez*, 1 NY3d 464 (2004); *People v Payne*, 3 NY3d 266 (2004); *People v Suarez*, 6 NY3d 202 (2005); *People v McPherson*, 6 NY3d 202 (2005); *People v Feingold*, 7 NY3d 288 (2006); *People v Atkinson*, 7 NY3d 765 (2006); *People v Mancini*, 7 NY3d 767 (2006); *People v Swinton*, 7 NY3d 776 (2006); *People v George*, 11 NY3d 848 (2008); *People v Taylor*, 15 NY3d 518 (2010); *People v Prindle*, 16 NY3d 768 (2011); *People v Lewie*, 17 NY3d 348 (2011); *People v Martinez*, 20 NY3d 971 (2012); *People v Bussey*, 19 NY3d 231 (2012); *People v Matos*, 19 NY3d 470 (2012); *People v Bell*, 21 NY3d 915 (May 2, 2013).

Still, there is a problem. Under our recent cases, the depraved indifference statutes are not an invitation for juries and judges to make moral judgments about how bad the conduct was in each particular case. We have insisted on a narrow, literal reading of "depraved indifference":

> "Our cases make clear that the word 'indifference' is to be taken literally: 'depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act . . . because one simply doesn't care whether grievous harm results or not' " (*Lewie*, 17 NY3d at 359, quoting earlier cases).

I find it hard to see how this defendant was any more indifferent to whether the victim lived or died than the defendant in *Bussey* was. *Bussey* establishes that we would not uphold a depraved indifference murder conviction on facts like the ones before us if the victim were an adult; yet the age of the victim hardly seems relevant to the question of whether the defendant was indifferent to the victim's fate. As the majority opinion shows, the strongest evidence of indifference in this case is in defendant's callous behavior in the hours between the assault and the child's death. But *Matos* establishes that we would not uphold the depraved indifference murder conviction of a defendant who reacted with equal callousness to child abuse that someone else had committed. I disagree with the heavy emphasis that the majority puts on defendant's post-assault behavior (*cf. Suarez*, 6 NY3d at 210 [depraved indifference should be decided "irrespective of what the actor does or does not do after inflicting the fatal injury"]). I think the evidence on that subject was relevant here, but I also think there was sufficient evidence without it to sustain the conviction. I would say that anyone who beats a baby to death in the way that this defendant did could be found to be a murderer, even if the assault was immediately followed by tears of remorse.

I conclude that the extraordinary evil of this kind of crime—severe, fatal abuse of a young child—warrants an exception to the rule of *Lewie* that "the word 'indifference' is to be taken literally." I am fortified in this conclusion by the legislature's recognition in the text of the murder statute that child abuse is in a class by itself. The broader depraved indifference murder statute, Penal Law § 125.25 (2), applies to a person who "[u]nder circumstances evincing a depraved indifference to human life . . . recklessly engages in conduct which creates a

grave risk of death to another person." But this defendant was prosecuted under Penal Law § 125.25 (4), applicable to one who "[u]nder circumstances evincing a depraved indifference to human life, and being eighteen years old or more . . . recklessly engages in conduct which creates a grave risk of *serious physical injury* or death to another person less than eleven years old" (emphasis added). Thus the legislature clearly intended to make child abusers punishable for murder when their victims died, even where the risk that they recklessly created was a risk of something less than death; the idea that "depraved indifference" can only exist when a defendant does not care whether the victim lives or dies seems incompatible with that intention.

I also find support for the application of the statute to this case in our decision in *Suarez*. There, we said that "[t]wo fact patterns have recurred" under the depraved indifference murder statute (6 NY3d at 212). One of those consists of defendants who engage "in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (*id.*). Defendant argues here that his case does not fit this category because his brutality was not "prolonged," but the argument misses the point; the *Suarez* categories are not the only possible kinds of depraved indifference murder. More relevant is *Suarez*'s recognition that maltreatment of a "particularly vulnerable victim" is an important factor in deciding whether the statute applies. Logically, the vulnerability of the victim may not justify an inference that the perpetrator was literally indifferent between life and death; but the moral enormity of a crime against such a victim does justify a less literal reading of the statute in this narrow class of cases.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and RIVERA concur with Judge PIGOTT; Judge SMITH concurs in result in an opinion; Judge ABDUS-SALAAM taking no part.

Order affirmed.