Devine, J.
Appeal from a judgment of the County Court of Schenectady County (Drago, J.), rendered November 8, 2013, convicting defendant following a nonjury trial of the crimes of murder in the second degree and manslaughter in the first degree.
Defendant’s eight-year-old grandson died as a result of hemorrhaging caused by multiple blunt force injuries sustained while in her care. She was indicted on charges of murder in the second degree (depraved indifference murder of a child) and manslaughter in the first degree. Following a bench trial, defendant was found guilty as charged. County Court sentenced her to concurrent prison terms of 25 years to life on the second-degree murder conviction and 25 years to be followed by three years of postrelease supervision on the first-degree manslaughter conviction. Defendant appeals, and we now affirm.
Defendant initially argues that the convictions are not supported by legally sufficient evidence and, moreover, are against *1076 the weight of the evidence. To briefly review, her challenge to the legal sufficiency of the evidence requires us to evaluate “whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by [the finder of fact] on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged” (People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Denson, 26 NY3d 179, 188 [2015]). A weight of the evidence review, in contrast, requires us to make a threshold determination as to “whether an acquittal would not have been unreasonable” (People v Danielson, 9 NY3d 342, 348 [2007]; see People v Bleakley, 69 NY2d at 495). Where it would not have been, this Court “must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony” to determine if the factfinder was justified in finding the defendant guilty (People v Bleakley, 69 NY2d at 495 [internal quotation marks and citation omitted]; see People v Danielson, 9 NY3d at 348; People v Lane, 7 NY3d 888, 890 [2006]).
Defendant asserts that the proof at trial established neither that she intended to physically injure the victim nor that she recklessly created a grave risk of serious physical injury and death (see Penal Law §§ 125.20 [4]; 125.25 [4]; People v Baker, 14 NY3d 266, 271-272 [2010]). In that regard, the victim was living with defendant during the events at issue and was on school break. He went to a store with defendant and his three aunts — who also lived with defendant and testified at trial as to their observations of the events at issue — and stole a pack of gum. Defendant learned of the theft, spanked him with a wooden back scratcher and made him return to the store to confess the theft and pay for the pack of gum. Defendant further made the victim write two essays on his transgression.
The punishment, however, did not stop there. Defendant made the victim do a variety of exercises the next day, which was Friday. Defendant was displeased with the manner in which the victim was doing pushups and, according to two of his aunts, bent him over a chair and began beating him with the back scratcher. The beating began around noon and continued well into the night — with the victim deprived of food and the severity of the blows worsening during that time — and defendant eventually lashed him to the chair with rope. Defendant further advised one of the victim’s aunts that she “could do this all night” and that she had no intention of “stop *1077 ping until she saw blood.” Defendant was still thrashing the victim when that aunt went to bed around 11:00 p.m., and defendant later pulled the victim from his bedroom and forced bim downstairs so that the assault could continue. The assault finally ended when the victim wet himself and, around 3:00 a.m., he was cleaned in the shower and put to bed in a wet T-shirt.
The victim awoke on Saturday morning and begged one of his aunts, who noted that “the whole side of him was purple,” to help him after he fell and was unable to lift himself off of the floor. Defendant, at that point, came up to the victim’s room and ordered that he be left “alone because he was looking for sympathy.” Defendant rebuffed the plea of one of the aunts to seek medical attention for the victim, instead saying that she would take him for a mental health evaluation on Monday. Defendant relented after the victim lost consciousness and collapsed, at which point he was transported to the hospital and was observed to have “bruises over his face, chest [and] abdomen and ... a large bruise . . . wrapping around the buttock to the front of his hip.” Medical professionals testified that at least several dozen blows hard enough to inflict serious injury were required to cause those bruises, which would have appeared soon after the blows and were indicative of the internal disruption in blood circulation that led to the victim’s death.* The foregoing evidence, when viewed in the light most favorable to the People, was legally sufficient to sustain the findings of County Court that defendant intended to physically injure the victim and recklessly created a grave risk of serious physical injury and death (see People v Varmette, 70 AD3d 1167, 1169 [2010], lv denied 14 NY3d 845 [2010]; People v Beckingham, 57 AD3d 1098, 1098-1099 [2008], lv denied 13 NY3d 742 [2009]). Moreover, to the extent that a different result could reasonably have been reached from the proof submitted at trial, we reject defendant’s claim that the findings of County Court were against the weight of the credible evidence (see People v Varmette, 70 AD3d at 1171).
Defendant’s similar challenges to the finding of County Court that the circumstances of the death “evinc[ed] a depraved indifference to human life” on her part are also unavailing (Penal Law § 125.25 [4]). Depraved indifference “is best understood as an utter disregard for the value of human life” (People v Suarez, *1078 6 NY3d 202, 214 [2005]), and may be found where the facts “reflect wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target” (id. at 213; see People v Barboni, 21 NY3d 393, 400 [2013]; People v McLain, 80 AD3d 992, 997 [2011], lv denied 16 NY3d 897 [2011]). Defendant inflicted brutal injuries upon a helpless child over a prolonged period, and County Court was free to conclude from her initial refusal to summon medical aid and her later failure to tell medical professionals treating the victim what had happened “that [she] evinced a wanton and uncaring state of mind” (People v Barboni, 21 NY3d at 402; see People v Suarez, 6 NY3d at 212; People v McLain, 80 AD3d at 997). In our view, legally sufficient evidence existed to make that finding, which was not against the weight of the evidence.
Defendant lastly contends that the sentences imposed were harsh and excessive. In light of the inhuman nature of her acts, her prior criminal history and her disturbing lack of remorse, that claim is wholly without merit.
Peters, P.J., Garry, Egan Jr. and Rose, JJ., concur. Ordered that the judgment is affirmed.

 The forensic pathologist who performed an autopsy on the victim noted that brain swelling had contributed to his death, although the pathologist could not say with certainty whether that swelling was caused by blood loss or head trauma.