*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: January 26, 2017 106123
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

BRANDON WARRINGTON,
                        Appellant.
_____

Calendar Date: May 29, 2015

Before: McCarthy, J.P., Egan Jr., Devine and Clark, JJ.

_____

        Paul J. Connolly, Delmar, for appellant, and appellant
pro se.

        Kathleen B. Hogan, District Attorney, Lake George (Emilee
B. Davenport of counsel), for respondent.

_____

McCarthy, J.P.

        Appeal (upon remittal from the Court of Appeals) from a
judgment of the County Court of Warren County (Hall Jr., J.),
rendered July 11, 2013, upon a verdict convicting defendant of
the crimes of murder in the second degree, manslaughter in the
second degree and endangering the welfare of a child.

        At all relevant times, defendant resided with his live-in
girlfriend, Jennifer Mattison, as well as her five-year-old son
(hereinafter the victim) and their infant son. On the morning of
November 15, 2012, Mattison called 911 to report that the victim
was having trouble breathing. The victim was suffering from
severe head injuries, and he died shortly thereafter. Defendant
was indicted on charges of murder in the second degree,

manslaughter in the second degree and endangering the welfare of
a child stemming from his abuse of the victim and his role in
causing the fatal injuries.[1]  Following a jury trial, defendant
was convicted as charged and sentenced to an aggregate prison
term of 25 years to life.  On appeal, this Court, with one
Justice dissenting, reversed the judgment and remitted the matter
for a retrial upon the finding that County Court had committed
reversible error in failing to excuse a prospective juror for
cause (130 AD3d 1368 [2015]).  The Court of Appeals thereafter
reversed this Court's order, holding that "the trial court did
not abuse its discretion by denying defendant's for-cause
challenge" to the prospective juror at issue (___ NY3d ___, ___,
2016 NY Slip Op 08584, *3 [2016]).  Further, the Court of Appeals
remitted the matter to this Court "for consideration of the facts
and issues raised but not determined on the appeal" (id. at *4).
We affirm.

Defendant first contends that County Court should have
suppressed the statements he made to investigators.  Defendant
had left the residence he shared with Mattison before she called
911.  The testimony at the suppression hearing reflects that,
upon his return, he was greeted by a police officer who had been
dispatched to secure the scene.  The officer summoned a police
detective who requested that defendant accompany him to the
police station for questioning.  Defendant agreed and the two
traveled to an interview room at the station where the detective
activated a recording system and administered Miranda warnings to
defendant from a written form.  Defendant then took the form,
read and signed it and agreed to talk to investigators.  County
Court also viewed the video recording of the interrogation —
which shows defendant being Mirandized and the 5½ hours that he
was in the room — which consisted of periods of questioning and
substantial periods where he sat alone.  Therefore, based on the
hearing testimony and the recording, "the People established that
defendant's statements were voluntarily made after a valid and

---

[1]  Mattison was charged with various offenses regarding her
role in the death and subsequent efforts to cover up its cause,
and those charges were resolved in a plea agreement that required
her to truthfully recount what had happened.

knowing waiver of his Miranda rights" (People v Lloyd, 118 AD3d 1117, 1119 [2014], lv denied 25 NY3d 951 [2015]).  Defendant further complains of the behavior of the investigators who conducted the questioning but, after considering the totality of the circumstances, we are satisfied that his "statements were not [the] products of coercion, either physical or psychological" (People v Thomas, 22 NY3d 629, 641 [2014]; see People v Jin Cheng Lin, 26 NY3d 701, 725 [2016]; People v Moore, 132 AD3d 496, 496-497 [2015], lv denied, 27 NY3d 1003 [2016]; People v Cavallaro, 123 AD3d 1221, 1223 [2014]).

Defendant next argues that the verdict was unsupported by legally sufficient evidence and, moreover, was against the weight of the evidence.  Defendant's challenge to the legal sufficiency of the evidence requires us to evaluate whether "there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal citation omitted]; see People v Ramos, 19 NY3d 133, 136 [2012]; People v Lynch, 95 NY2d 243, 247 [2000]).  A weight of the evidence review, in contrast, requires us to make a threshold determination as to whether a different verdict would not have been unreasonable given all of the credible evidence (see People v Danielson, 9 NY3d 342, 348 [2007]; People v Bleakley, 69 NY2d at 495).  Where a different verdict would not have been unreasonable, this Court "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d at 495 [internal quotation marks and citation omitted]; see People v Danielson, 9 NY3d at 348).

Defendant first claims that the proof did not establish that he recklessly engaged in conduct that created a grave risk of serious physical injury or death to the victim and, in fact, resulted in his death (see Penal Law §§ 15.05 [3]; 125.15 [1]; 125.25 [4]).  Physical examinations of the victim after his fatal injury revealed that bruising, abrasions and other injuries covered his body and, while defendant attempted to dispute the

origin of those injuries, the trial record is replete with proof that they were the result of abuse inflicted by defendant. Among the acts of abuse that Mattison observed was one on November 11, 2012, when she saw defendant pick up the victim by the neck and repeatedly slam his head against a wall. The victim's fatal injuries similarly stemmed from blunt force trauma to the head, which led to brain swelling, subdural hematoma and cell death. Several physicians opined that the fatal trauma must have occurred in the hours before the victim became unresponsive, and Mattison's testimony sheds the most light on those hours.

Mattison specifically testified that defendant was very angry with the victim when he was put to bed on November 14, 2012. The victim had seemed upset, but had otherwise acted normally that evening, and Mattison discerned nothing unusual in his demeanor when she put him to bed. Mattison awoke around 2:30 a.m. on November 15, 2012 to find defendant missing from their bedroom, and he failed to offer a persuasive explanation for his absence when he returned to bed. Defendant woke the victim up at 7:45 a.m. to use the bathroom, which Mattison found odd given that the victim was usually awake by then and defendant had no reason to rouse him. When the victim emerged from his bedroom, he was unsteady, pale and disoriented, and defendant had to guide him to the bathroom. Defendant responded to these clear signs of distress by slamming the victim on the floor and screaming that he should be able to use the bathroom on his own. Mattison left the room to tend to her infant son, who had begun crying. She then heard a thud and returned to find the victim lying unconscious on his bed. According to Mattison, defendant ordered her not to call 911 until he left for an appointment, and defendant admittedly wrote down a cover story for her to relate to the authorities. Mattison eventually summoned assistance at 9:30 a.m. and reported that the victim had hit his head after jumping on his bed, although she recanted that story in her trial testimony.

Defendant continued to maintain at trial that the victim had fallen while jumping on his bed. The medical evidence indicated, however, that such a routine accident could not have inflicted the fatal trauma. Instead, testifying physicians opined that the victim's injuries could only have been caused by

the type of force that would be encountered in a heavy blow, a fall from a great height or an automobile accident. It is also worthy of note that, while defendant was at the police station later in the day, he wrote a letter to Mattison in which he apologized for hurting the victim and stated that he "didn't think [he] pushed [the victim] . . . that hard."[2] In short, while no one observed the deadly blow being struck, defendant was previously seen slamming the victim's head against a wall and was angry with the victim, his whereabouts in the residence were unknown for a considerable portion of the overnight hours of November 15, 2012, and he apologized to Mattison for injuring the victim. In our view, this proof was legally sufficient to permit a finding that defendant engaged in conduct that recklessly created a risk of serious physical injury or death to the victim and, in fact, caused his death. The jury made that finding, notwithstanding the conflicting account offered by defendant. After assessing the proof offered at trial and according due deference to the jury's assessment of credibility, we cannot say that its verdict was against the weight of the evidence (see People v McLain, 80 AD3d 992, 996 [2011], lv denied 16 NY3d 897 [2011]; People v Varmette, 70 AD3d 1167, 1169-1171 [2010], lv denied 14 NY3d 845 [2010]).

Defendant's similar challenge to the jury's finding that the circumstances of the victim's death "evinc[ed] a depraved indifference to human life" on his part is also unavailing (Penal Law § 125.25 [4]). Depraved indifference "is best understood as an utter disregard for the value of human life" (People v Suarez, 6 NY3d 202, 214 [2005]) and may be found in those cases where the facts "reflect wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter

---

[2] This acknowledgment and the proof of the victim's injuries readily "established that [defendant] 'knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare' of" the victim (People v Mitchell, 94 AD3d 1252, 1255 [2012], lv denied 19 NY3d 964 [2012], quoting Penal Law § 260.10 [1]). As such, his conviction for endangering the welfare of a child was based upon legally sufficient evidence and was supported by the weight of the evidence.

indifference to the life or safety of the helpless target" (id. at 213; see People v Barboni, 21 NY3d 393, 400 [2013]; People v McLain, 80 AD3d at 997). Defendant inflicted brutal injuries upon a helpless child, and the jury could rationally conclude – from his total indifference to the victim's physical distress upon waking up, his refusal to allow Mattison to promptly summon medical assistance or relate the truth of what happened, and his decision to leave the incapacitated victim and go to a previously scheduled appointment – "that [he] evinced a wanton and uncaring state of mind" (People v Barboni, 21 NY3d at 402; see People v McLain, 80 AD3d at 997). Defendant points out that he later texted Mattison regarding the victim's condition and wrote a letter expressing remorse, but his "state of mind and the real reasons for [his later actions] . . . implicate[d] credibility questions" for the jury to resolve (People v Waite, 108 AD3d 985, 987 [2013]; see People v Johnson, 106 AD3d 1272, 1278 [2013], lvs denied 21 NY3d 1043, 1045, 1046 [2013]). The jury determined that his belated expressions of concern did not reflect any interest in the victim's welfare and, deferring to their assessment of credibility, we cannot say that their finding was against the weight of the evidence.

Defendant further claims that he was deprived of the effective assistance of counsel, but such an argument will fail "so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Goldston, 126 AD3d 1175, 1178-1179 [2015] [internal quotation marks, brackets and citations omitted], lv denied 25 NY3d 1201 [2015]; see People v Flores, 84 NY2d 184, 186-187 [1994]; People v Gokey, 134 AD3d 1246, 1246 [2015], lv denied, 27 NY3d 1069 [2016]). Defendant points to a myriad of purported errors, but stresses a mistake by defense counsel wherein he inadvertently elicited testimony regarding otherwise undisclosed prior assaultive behavior and drug use by defendant. In light of the extensive proof documenting defendant's violent behavior toward the victim and his use of synthetic marihuana, however, that error cannot be viewed as sufficiently egregious or prejudicial as to deprive defendant of a fair trial (see People v Sanchez, 54 AD3d 638, 639 [2008], lv denied 11 NY3d 930 [2009]). Defense counsel further failed to

object to the testimony of a physician who examined the victim and found injuries consistent with spanking and anal penetration that had occurred no more than 24 hours before the fatal assault. The People used that proof, in conjunction with other evidence that defendant was alone with the victim during the relevant period and made statements suggesting that he was aware of the penetration, to suggest that defendant was the perpetrator of the abuse. Inasmuch as the proof was relevant to the charge of endangering the welfare of a child, however, any objection to its admission would have been fruitless (see People v McIver, 245 AD2d 180, 180 [1997], lv denied 91 NY2d 1010 [1998]).[3] In fact, far from the shoddy representation described by defendant, our review of the record reveals that defense counsel engaged in appropriate pretrial motion practice, vigorously contested the People's case and advanced a cogent defense at all stages of trial. Thus, "despite any isolated and discrete shortcomings in" counsel's performance, we find that defendant received meaningful representation (People v Goldston, 126 AD3d at 1179).

County Court did not abuse its discretion in fashioning a Sandoval ruling that permitted the People to inquire into the facts of a 2010 conviction for reckless endangerment in the second degree. That conviction was recent, "the nature of the conviction was probative of defendant's credibility and honesty and the commission of that crime certainly does not suggest a propensity to commit the crimes for which defendant was on trial" (People v Henderson, 22 AD3d 883, 884 [2005], lv denied 6 NY3d 776 [2006]; see People v Chamberlain, 178 AD2d 783, 785 [1991], lv denied 79 NY2d 945 [1992]). We have previously rejected the contention that manslaughter in the second degree is a lesser included offense of depraved indifference murder of a child, and we decline defendant's invitation to revisit the issue in order to dismiss his manslaughter conviction (see People v Heslop, 48 AD3d 190, 194-196 [2007], lv denied 10 NY3d 935 [2008]).

---

[3] Defense counsel successfully argued that the People should not be permitted to introduce highly prejudicial Molineux evidence of uncharged sexual abuse that had occurred in July 2012.

Next, defendant failed to preserve his contention that prosecutorial misconduct deprived him of a fair trial, and, having examined the alleged misconduct, we find corrective action in the interest of justice is unwarranted (see People v Scippio, 144 AD3d 1184, 1187-1188 [2016]; People v Fomby, 101 AD3d 1355, 1357 [2012]). Finally, in light of the heinous nature of the crimes at issue, the sentence imposed was neither harsh nor excessive (see People v Jones, 139 AD3d 1189, 1191 [2016], lv denied 28 NY3d 932 [2016]; People v Nelligan, 135 AD3d 1075, 1078 [2016], lv denied 27 NY3d 1072 [2016]; People v Engelhardt, 94 AD3d 1238, 1241 [2012], lv denied 19 NY3d 960 [2012]). Those specific contentions not addressed herein — considering defendant's brief, supplemental brief and supplemental pro se brief — have been examined and are found to also be without merit.

Egan Jr., Devine and Clark, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court