People v Stahli (2018 NY Slip Op 01359)





People v Stahli


2018 NY Slip Op 01359


Decided on March 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 1, 2018

107731

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
KENNETH STAHLI, Appellant.

Calendar Date: January 17, 2018

Before: Egan Jr., J.P., Devine, Mulvey, Aarons and Rumsey, JJ.


Paul J. Connolly, Delmar, for appellant.
D. Holley Carnright, District Attorney, Kingston (Marlene O. Tuczinski, New York Prosecutors Training Institute, Albany, of counsel), for respondent.


Devine, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered June 4, 2015, upon a verdict convicting defendant of the crime of murder in the second degree.
Defendant resided with Katlin Wolfert and her two sons, the two-year-old victim and his younger brother, in the summer of 2014. Beginning in mid-July 2014, defendant cared for the children while Wolfert was working. On the afternoon of August 5, 2014, the victim's aunt went to wake him up and found him unresponsive in bed. Emergency responders observed that rigor mortis was already setting in on the heavily bruised victim, and it was later determined that he succumbed to nonaccidental blunt force trauma and attendant blood loss. An investigation pointed
to defendant as the perpetrator of these injuries, and he was indicted on one count of murder in the second degree (depraved indifference murder of a child). Following a jury trial, defendant was found guilty as charged. County Court sentenced defendant to 25 years to life in prison, and he now appeals.
We affirm. Defendant argues that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. A legal sufficiency challenge requires us to "view the evidence in the light most favorable to the People and evaluate whether 'there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged'" (People v Robinson, [*2]156 AD3d 1123, 1124 [2017], quoting People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Kancharla, 23 NY3d 294, 302 [2014]). A legally sufficient verdict may, however, be against the weight of the evidence (see People v Danielson, 9 NY3d 342, 349 [2007]). The latter review requires us to assess whether acquittal was a reasonable possibility and, if so, to weigh "the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" in deciding whether the verdict was justified (People v Bleakley, 69 NY2d at 495 [internal quotation marks and citation omitted]; see People v Kancharla, 23 NY3d at 303).
Defendant first questions whether the trial proof established that he recklessly engaged in conduct that created a grave risk of serious physical injury or death to the victim and resulted in the victim's death (see Penal Law § 125.25 [4]). His challenge to the legal sufficiency of this proof is unpreserved due to his failure to attack it in his trial motion of dismissal; nevertheless, we consider "whether the elements of the challenged crime were proven beyond a reasonable doubt" as part of our weight of the evidence review (People v Rosario, 157 AD3d 988, 989 [2018]; see People v Odofin, 153 AD3d 972, 974 [2017]). In that regard, Wolfert testified, and the victim's treating nurse practitioner confirmed, that the victim was healthy prior to being left in defendant's clutches. By the time of the victim's death, he was covered by approximately 80 visible bruises and abrasions and had significant internal injuries. The internal injuries included brain, spine and eye injuries that a medical examiner testified were classic indications of a child striking his or her head while being shaken. The victim also fractured a rib, an injury often seen in a child subjected to nonaccidental squeezing. The medical evidence reflected that the primary cause of the victim's death, however, was massive internal bleeding caused by a single incident three to five days prior to his death wherein extreme, sudden compression of his abdomen lacerated his liver and intestines and ripped apart his pancreas.
The victim was visibly injured in the week before he died, as Wolfert testified to seeing him with bruises, a black eye, a bloody nose and a fat lip. She also testified to returning from work on July 29, 2014 to find him bruised, lethargic, vomiting and passing blood. Wolfert further observed that the victim was not "acting right" and, on the day before his death, asked coworkers if they thought she should seek medical attention for him. Another witness testified that she saw the victim's head "lolling to the side" and his eyes "rolling into the back of his head" before he died, observations so disturbing that she unsuccessfully urged defendant to take the victim to the hospital. Defendant passed some of these injuries off to Wolfert as having occurred under her supervision and suggested that most resulted from the victim's clumsiness, but other witnesses tied them to defendant's abuse. For example, a neighbor testified that, about five days before the victim died, he watched defendant vigorously shake the screaming victim in a parked vehicle and slam the victim against a car seat with such force that he bounced up and struck his head on the vehicle ceiling. Another witness related a conversation on August 2 or 3, 2014 in which defendant recounted how the victim had bitten him on the finger, prompting defendant to throw the victim on a bed so forcefully that the bed broke at some point. Defendant admitted to investigators that this had happened, adding that he placed his right knee onto the victim's stomach while pulling his finger free. Of note, the medical examiner testified that a knee being forcefully jammed into the victim's abdomen could account for the internal injuries that led to his death.
This extensive proof indicated that defendant inflicted severe and eventually fatal injuries upon the victim in the week prior to his death, and defendant himself acknowledged to investigators that no one else was in a position to cause those injuries. Therefore, deferring to the jury's assessment that this evidence was credible, its finding that defendant "recklessly engaged in conduct that created a grave risk of serious physical injury or death to the victim and, in fact, [*3]resulted in his death" was not against the weight of the evidence (People v Warrington, 146 AD3d 1233, 1235 [2017], lv denied 29 NY3d 1038 [2017]; see Penal Law § 15.05 [3]; People v Barboni, 21 NY3d 393, 405 [2013]; People v Varmette, 70 AD3d 1167, 1171 [2010], lv denied 14 NY3d 845 [2010]).
Defendant assertion that the trial proof failed to establish his "depraved indifference to human life" is unavailing (Penal Law § 125.25 [4]). Depraved indifference is, simply put, "an utter disregard for the value of human life" (People v Suarez, 6 NY3d 202, 214 [2005]). It exists "where the facts 'reflect wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target'" (People v Nelligan, 135 AD3d 1075, 1078 [2016], lv denied 27 NY3d 1072 [2016], quoting People v Suarez, 6 NY3d at 213; see People v Barboni, 21 NY3d at 400). The proof in this case showed that "[d]efendant inflicted brutal injuries upon a helpless child over a prolonged period," attempted to conceal his role in causing them and rejected a plea to obtain medical attention for a victim in obvious decline (People v Nelligan, 135 AD3d at 1078). Therefore, legally sufficient evidence existed to support the conclusion "that defendant evinced a wanton and uncaring state of mind" (People v Barboni, 21 NY3d at 402) and, in our view, the jury's decision to make that finding was not against the weight of the evidence (see People v Warrington, 146 AD3d at 1237; People v Waite, 145 AD3d 1098, 1101 [2016], lv denied 29 NY3d 953 [2017]; People v Varmette, 70 AD3d at 1171).
Defendant next argues that County Court erred in denying his request to charge criminally negligent homicide (see Penal Law § 125.10) as a lesser included offense of depraved indifference murder of a child. "A crime cannot be a lesser included offense of a greater one unless, when assessing the elements of the two crimes, it is 'theoretically impossible to commit the greater crime without at the same time committing the lesser'" (People v Cruz, 152 AD3d 822, 824 [2017], lv denied 30 NY3d 1018 [2017], quoting People v Green, 56 NY2d 427, 430 [1982]; see CPL 1.20 [37]; People v Rivera, 23 NY3d 112, 120-121 [2014]). Criminally negligent homicide demands that a person act "with criminal negligence" and, in doing so, "causes the death of another person" (Penal Law § 125.10). Inasmuch as criminal negligence involves a person failing "to perceive [the] substantial and unjustifiable risk" of the result set forth by the statute (Penal Law § 15.05 [4]), a person does not commit criminally negligent homicide unless he or she fails to perceive a substantial and unjustifiable risk of death (see People v Ricardo B., 73 NY2d 228, 235 [1989]; People v Montanez, 41 NY2d 53, 56 [1976]). In contrast, Penal Law § 125.25 (4) demands that an adult person, "[u]nder circumstances evincing a depraved indifference to human life, . . . recklessly engage[] in conduct which creates a grave risk of serious physical injury or death to another person less than [11] years old" and that ends in the other person's death (emphasis added).
The definition of serious physical injury encompasses injuries that do not create a substantial risk of death or cause death, such as those that cause "serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). As we have previously held, it is therefore theoretically possible to commit depraved indifference murder of a child by "engag[ing] in conduct that creates and disregards a grave risk of serious physical injury, causing death, without . . . engaging in conduct that creates . . . a substantial risk of death, causing death" (People v [*4]Heslop, 48 AD3d 190, 195 [2007], lv denied 10 NY3d 935 [2008])[FN1]. Defendant urges us to overrule this precedent — which is in accord with the other Appellate Divisions that have addressed the issue (see People v Mora, 57 AD3d 571, 572-573 [2d Dept 2008], lv denied 12 NY3d 785 [2009]; People v Robinson, 278 AD2d 798, 798 [4th Dept 2000], lv denied 96 NY2d 762 [2001]) — but we recently declined a similar invitation and perceive no compelling reason to accept this one (see People v Warrington, 146 AD3d at 1239). Thus, criminally negligent homicide is not a lesser included offense of depraved indifference murder of a child, and County Court correctly declined to charge it as such.
Defendant further contends that he was deprived of a fair trial when the prosecutor expressed his personal upset over the allegations and vouched for the credibility of certain evidence at several points during his summation. To the extent that this argument was preserved for our review when defendant alerted County Court to the comments in his post-summation objection (see CPL 470.05 [2]; People v Balls, 69 NY2d 641, 642 [1986]), it is without merit. The prosecutor apologized for his excesses when the comments were called to his attention, and he suggested a curative instruction. Defendant crafted the curative instruction and, while County Court delivered it in a slightly modified form, it still served to dissipate any prejudice by "clearly advising the jury that the comments were improper and must be completely disregarded" (People v Ashwal, 39 NY2d 105, 111 [1976]; see People v VanVorst, 118 AD3d 1035, 1037 [2014]). Accordingly, while the "comments would have been better left unsaid, the circumstances of this case do not reveal that they represented a flagrant and pervasive pattern of misconduct that deprived [defendant] of a fair trial" (People v Nadal, 131 AD3d 729, 731 [2015], lv denied 26 NY3d 1041 [2015]; see People v Story, 81 AD3d 1168, 1168-1169 [2011]; People v Guay, 72 AD3d 1201, 1203-1204 [2010], affd 18 NY3d 16 [2011]).
Finally, in light of the vicious nature of the crime, the sentence imposed by County Court was neither harsh nor excessive (see People v Warrington, 146 AD3d at 1239; People v Manos, 73 AD3d 1333, 1339 [2010], lv denied 15 NY3d 807 [2010]).
Egan Jr., J.P., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: To show that "circumstances evincing a depraved indifference to human life" existed (Penal Law § 125.25 [4]), the People needed to show "that defendant did not care whether his victim lived or died" (People v Barboni, 21 NY3d at 400). Although a defendant may act in a manner that recklessly creates a grave risk of serious physical injury to a young child without also creating a substantial risk of death, the requisite indifference may still be shown if, for example, death later results from a decision to ignore physical deterioration caused by "infection, shock or some other complication flowing from the [initial] abuse" (People v Heslop, 48 AD3d at 196).