People v Wilson (2018 NY Slip Op 04380)

People v Wilson

2018 NY Slip Op 04380 [32 NY3d 1]

June 14, 2018

Garcia, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 24, 2018

[*1]

The People of the State of New York, Respondent,
v
Theodore Wilson, Appellant.

Argued May 1, 2018; decided June 14, 2018

People v Wilson, 147 AD3d 793, affirmed.

{**32 NY3d at 3} OPINION OF THE COURT

Garcia, J.

Defendant Theodore Wilson assaulted his girlfriend on multiple occasions over a period of two months, causing numerous{**32 NY3d at 4} broken bones, a brain injury, and lifelong cognitive impairments. The question for this Court is whether that proof provided sufficient evidence to support his conviction for depraved indifference assault (Penal Law § 120.10 [3]). We conclude that there was and therefore affirm.
I.
The victim met defendant after relocating from Utah to New York in January 2010 and he moved in with her not long after. In August 2011, the victim suffered a burst blood clot on her ear. When the doctor at a local hospital examined her, however, he noticed "evidence of previous trauma," including signs of bruising that had healed abnormally. She claimed that she had been hit by a baseball a few weeks earlier.
In September 2011, defendant spoke with the victim's mother, complaining that the victim was behaving strangely and "banging her head against the wall." He suggested that she might be possessed by an evil spirit. The victim's mother proposed that her daughter receive a spiritual blessing, intending to use this ceremony as a way for others to get into the apartment and check on her daughter. Defendant also called a friend who was a nurse and told [*2]him that the victim had fallen and was acting "possessed." The friend heard moaning in the background and advised defendant to take the victim to the hospital.
On October 1, 2011, two clergymen arrived at the apartment to perform the blessing. They found the victim lying on a mattress, rocking back-and-forth and moaning incoherently. She was visibly injured. Defendant claimed the injuries were self-inflicted—the result of her possession by an evil spirit. In response to the suggestion that defendant seek medical attention for the victim, defendant replied, "they will blame it on me," but later agreed that the clergymen should call an ambulance. When first responders arrived, they discovered that the victim had suffered severe injuries. An emergency medical technician (EMT) asked the victim several times whether she was afraid, and, at one point, she nodded affirmatively. The EMTs eventually carried her to an ambulance and called the police. Once in the ambulance, an EMT asked the victim whether defendant had done this to her and she responded affirmatively.
At the hospital, the victim lapsed into a coma, and she had to be resuscitated and put on a ventilator. A subsequent examination{**32 NY3d at 5} revealed that she had suffered black eyes, an infected cigarette burn, "cauliflower ear," broken ribs, a collapsed lung, several broken vertebrae in her neck and back, a fractured orbital bone, a broken nose, a dislocated shoulder, a shattered breastbone, multiple lacerations, and bruises all over her body. A CAT scan also revealed a type of brain injury generally caused by "violent force trauma to the head" that is fatal in 90% of cases. The 10% who survive suffer lifelong health effects, as the victim has, including physical and cognitive injury.
According to the trauma surgeon, these injuries were "all in various stages of healing" suggesting that they had been inflicted at different times. The surgeon testified that he had difficulty "assign[ing] an exact date and time" for when these injuries occurred but he opined that some of the victim's ribs had been broken within 24 hours of her admission to the hospital. The breastbone fracture, however, could have been months old given the degree to which it had already healed. He opined that the victim's injuries could not have been self-inflicted as some were so debilitating that it would have been physically impossible for her to continue injuring herself. According to the expert, had the victim not been admitted to the hospital, she probably would have succumbed to her injuries within a matter of hours. She ultimately spent three weeks in intensive care and currently lives in an assisted-living facility.
A grand jury indicted defendant on one count of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), one count of intentional assault in the first degree (id. § 120.10 [2]), one count of depraved indifference assault in the first degree (id. § 120.10 [3]), and one count of intentional assault in the second degree (id. § 120.05 [1]). These charges were based on defendant's continuing course of conduct during the two-month period between August and October 2011. The jury found defendant guilty of first-degree depraved indifference assault and second-degree intentional assault, but acquitted him of the other charges.
The Appellate Division unanimously affirmed the judgment, holding that "the People adduced legally sufficient evidence to support the defendant's conviction of assault in the first degree under Penal Law § 120.10 (3) beyond a reasonable doubt, as the evidence of the defendant's conduct supported a finding of depraved indifference" (People v Wilson, 147 AD3d 793, 793 [2d Dept 2017] [citation omitted]). A Judge of this Court subsequently granted defendant leave to appeal (People v Wilson, 29 NY3d 1089 [2017]).{**32 NY3d at 6}
II.
On appeal, defendant contends that the evidence was insufficient to prove the mental state of depraved indifference for first-degree assault because he intentionally inflicted the injuries and therefore could not have possessed, as a matter of law, the requisite mens rea. "A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements proved beyond a reasonable doubt" (People v Bailey, 13 NY3d 67, 70 [2009] [internal quotation marks omitted]). The reviewing court, in other words, must "marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained [their] burden of proof" (People v Danielson, 9 NY3d 342, 349 [2007]).
A person is guilty of depraved indifference assault in the first degree when, "[u]nder circumstances evincing a depraved indifference to human life, [that person] recklessly engages in conduct which creates a grave risk of death to [*3]another person, and thereby causes serious physical injury to another person" (Penal Law § 120.10 [3]). To prove the requisite mens rea, the People must show both (1) recklessness creating a grave risk of death and (2) a depraved indifference to human life (see People v Barboni, 21 NY3d 393, 400 [2013]).[FN1] This Court has made clear that "depraved indifference" is a culpable mental state (see People v Feingold, 7 NY3d 288 [2006]). For first-degree assault, the depraved indifference must reflect wanton cruelty, brutality, or callousness, combined with an utter indifference as to whether the victim lives or dies (see People v Suarez, 6 NY3d 202, 213 [2005]). That is, depraved indifference is "an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (Feingold, 7 NY3d at 296 [internal quotation marks omitted]). Notably, "depraved {**32 NY3d at 7}indifference assault can be a continuing crime" and "the element of depravity can be alleged by establishing that defendant engaged in a course of conduct over a period of time" (People v Bauman, 12 NY3d 152, 155 [2009]).
Here, the People adduced legally sufficient evidence to support a finding of depraved indifference, including both (1) recklessness creating a grave risk of death and (2) a depraved indifference to the victim's life. First, the People offered expert testimony that the victim suffered a "protracted continuous injury pattern over months," suggesting a prolonged period of domestic abuse. Her injuries included, among other things, scarring, bruising, a dislocated shoulder, a collapsed lung, a broken breastbone, broken ribs, and permanent brain damage. The trauma surgeon opined that, had she not been admitted to the hospital, she would have succumbed to her injuries in a matter of hours. Defendant's sustained violence in the face of her worsening condition demonstrates that he consciously disregarded a grave risk that the victim would die.
Second, given the duration and severity of these injuries, the jury had a valid line of reasoning to infer that defendant tortured his girlfriend in a manner that demonstrated a depraved indifference to her life. The victim's injuries, inflicted by blunt force trauma over a period of months, demonstrate the type of "uncommon brutality" and "inhuman cruelty" contemplated by a depraved indifference crime (Suarez, 6 NY3d at 216). That conduct ranged from burning the victim with a cigarette to causing her permanent brain damage. The continuing abuse, moreover, occurred during a two-month period in which defendant had multiple opportunities "to regret his actions and display caring, but failed to take the opportunity" (Barboni, 21 NY3d at 403). Instead, he attempted to hide the severity of those injuries and suggested that they were self-inflicted. Defendant also isolated the victim, obstructed those who sought to check on her, and ignored his friend's advice that the victim needed immediate medical attention. When the victim was near death, and the clergymen suggested calling an ambulance, defendant's only concern was that he would be "blamed" for her injuries. Defendant's "failure, over some [time], to seek medical attention" for the gravely-injured, brain-damaged victim, coupled with the brutal and repetitive trauma inflicted on her, established the requisite level of depraved indifference to human life (id.).
Viewing the evidence in a light most favorable to the People, a rational juror could conclude that defendant was indifferent{**32 NY3d at 8} to whether his victim lived or died, and that he recklessly engaged in conduct creating a grave risk of death—notwithstanding the fact that he may have also intended to inflict harm on any given occasion.
Contrary to defendant's assertion, proof of an intent to inflict serious physical injury does not necessarily preclude a finding of depraved indifference in assault cases. As this Court has observed, "[a] defendant could certainly intend one result—serious physical injury—while recklessly creating a grave risk that a different, more [*4]serious result—death—would ensue from his actions" (People v Trappier, 87 NY2d 55, 59 [1995]; see also People v Dubarry, 25 NY3d 161, 173 [2015] [reaffirming Trappier post-Feingold]; People v Baker, 14 NY3d 266, 271 [2010] [same]; Matter of Suarez v Byrne, 10 NY3d 523, 540-541 [2008] [same]). Indeed, not every serious physical injury—whether "protracted disfigurement" or "protracted loss or impairment of the function of any bodily organ"—"creates a substantial risk of death" within the meaning of Penal Law § 10.00 (10). Unlike the distinction between intentional and reckless homicide (see People v Gallagher, 69 NY2d 525, 529 [1987]), "there is no inconsistency if the defendant acts with different mental states with regard to two different potential or intended results. The obvious example is where the defendant intentionally beats [the] victim but is indifferent and reckless as to whether the victim dies" (Sweet v Bennett, 353 F3d 135, 144 [2d Cir 2003, Walker, J., concurring]). In such a case, the defendant could be properly charged with both intentional and depraved indifference assault insofar as "he acted intentionally as to causing serious physical injury, but recklessly as to causing a grave risk of death" (id. at 148).
Considering the nature and location of the victim's injuries, a reasonable jury could conclude that defendant did not intend to kill, and the jury apparently accepted that view of the evidence, acquitting defendant of attempted murder. The jury instead found that defendant intended to cause serious physical injury, convicting him of intentional assault in the second degree, while simultaneously finding that his abuse had recklessly created a grave risk of death. Defendant acted with separate mental states regarding separate outcomes—i.e., serious physical injury and risk of death. And the separate mental states of intent and recklessness "are not mutually exclusive when applied to different outcomes" (Trappier, 87 NY2d at 57){**32 NY3d at 9}.
III.
Defendant further contends that the evidence was insufficient "because one-on-one crimes generally cannot be charged under a depraved indifference theory and this case does not fit within the very limited exception to this rule." Defendant, in other words, asks us to classify this assault as falling within the narrow exceptions we have articulated for bringing depraved indifference murder charges in one-on-one killings.
In People v Feingold, we held that "depraved indifference to human life is a culpable mental state" rather than an objective assessment of the degree of risk presented by a defendant's reckless conduct, overruling our earlier precedent to the contrary (7 NY3d 288, 294 [2006]). Our decision in Feingold represented the culmination of a series of cases involving one-on-one attacks with a deadly weapon in which we reversed depraved indifference murder convictions because the defendants had an incontrovertible intent to kill (see e.g. People v Suarez, 6 NY3d 202 [2005]; People v Payne, 3 NY3d 266 [2004]; People v Gonzalez, 1 NY3d 464 [2004]; People v Hafeez, 100 NY2d 253 [2003]).
We did, however, delineate two exceptional circumstances in which such a one-on-one confrontation might suffice to establish the mental state of depraved indifference. The first circumstance occurs "when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die" (Suarez, 6 NY3d at 212; see e.g. People v Mills, 1 NY3d 269 [2003]; People v Kibbe, 35 NY2d 407 [1974]). The second circumstance occurs "when a defendant—acting with a conscious objective not to kill but harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (Suarez, 6 NY3d at 212; see e.g. People v Best, 85 NY2d 826 [1995]; People v Poplis, 30 NY2d 85 [1972]). As we explained in Barboni:
"A brutal course of conduct against a vulnerable victim occurring over a prolonged or extended period of time is more likely to be associated with the mental state of depraved indifference to human life than brutality that is short in duration and is not repeated. This is because the actor had the opportunity to regret his actions and display caring, but failed to take the opportunity" (21 NY3d at 403).{**32 NY3d at 10}
Here, the trial court instructed the jury, in accordance with Suarez, that they could find defendant acted with depraved indifference to human life if, "having a conscious objective not to kill but to harm, he engages in . . . a brutal, prolonged and potentially fatal course of conduct against a particularly vulnerable victim." The failure of either party to object to the charge meant that "the law as stated in that charge became the law applicable to the determination of the rights of the parties . . . and thus established the legal standard by which the sufficiency of the evidence to support the verdict must be judged" (Harris v Armstrong, 64 NY2d 700, 702 [1984]). Thus, "the legal [*5]sufficiency of defendant's conviction must be viewed in light of the court's charge as given without exception" (People v Ford, 11 NY3d 875, 878 [2008]).[FN2]
Viewed as such, the jury could reasonably conclude that the victim's injuries were so severely debilitating that the repeated trauma rendered her particularly vulnerable. In fact, the victim could barely move and speak before she lapsed into a coma. The People also presented sufficient evidence from which the jury could infer that the victim's injuries persisted for a prolonged period of time. Defendant nonetheless contends that the "particularly vulnerable victim" classification is limited to young children and, therefore, an abused domestic partner would not qualify. Contrary to defendant's contention, however, this Court has never held that only young children can warrant the "particularly vulnerable victim" classification for the purposes of this exception.[FN3] It would be exceedingly strange to find that a defendant possesses the requisite mental state when he or she abandons a helpless adult victim (see Kibbe, 35 NY2d at 409-410), but not when a defendant subjects an equally helpless adult victim to a prolonged period of torture.
In any event, defendant is incorrect that depraved indifference assault must fit into one of the narrow exceptions for bringing depraved indifference murder charges in one-on-one killings. Our concerns in the depraved indifference murder cases were grounded in the fact that "[i]ntentional murder and depraved indifference murder are equivalent in that both are{**32 NY3d at 11} classified at the highest grade and carry the same penalty" (Suarez, 6 NY3d at 206). This Court noted with alarm "[t]he proliferation of the use of depraved indifference murder as a fallback theory under which to charge intentional killers" finding that it "reflect[ed] a fundamental misunderstanding of the depraved indifference murder statute" (id. at 207). We were also concerned that jurors would convict a defendant of depraved indifference murder when the evidence did not support the verdict because they could "conclude that anyone who would intentionally take a life is depraved, or because they mistakenly believe that depraved indifference murder is a lesser offense than intentional murder and are reluctant to convict of the 'most serious' charge" (id.). Consequently, we clarified that depraved indifference murder "properly applies only to a small, and finite, category of cases where the conduct is at least as morally reprehensible as intentional murder" (id.).
Absent circumstances in which bystanders might be endangered by defendant's conduct, "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder" (Payne, 3 NY3d at 272). That is so because a manifest intent to kill necessarily negates a reckless indifference to the victim's life (see Gallagher, 69 NY2d at 529). As a result, "[a] defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances" (Suarez, 6 NY3d at 212). But a one-on-one assault, particularly where no deadly weapon is involved, can qualify as a depraved indifference assault in more than these "few rare circumstances" because there is no inconsistency in finding an intent to cause serious physical injury and a reckless indifference as to whether the victim lives or dies. As defined, "serious physical injury includes an injury causing not only death or a substantial risk of death but also serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Trappier, 87 NY2d at 59, citing Penal Law § 10.00 [10]). Contrary to the concurrence's suggestion (Rivera, J., concurring op at 
14), not all serious physical injuries will create a substantial risk of the victim's death. The intentional infliction of protracted disfigurement, for example, "does not rule out the possibility" that the defendant may have also unintentionally—yet recklessly—created a grave risk of death "since not all 'serious' injuries are necessarily life threatening" (People v {**32 NY3d at 12}Moloi, 135 AD2d 576, 577 [2d Dept 1987]). Thus, depraved indifference assault differs from depraved indifference [*6]murder insofar as guilt of intent to cause serious physical injury does not necessarily negate guilt of depraved indifference to human life.
Moreover, the categories of first-degree assault do not create any risk of a misperception that depraved indifference assault is a less serious crime than intentional assault. In the murder context, a jury might well consider "indifference" to death a less culpable state of mind than "intentional" murder, even though the crimes are equivalent for purposes of punishment (see Suarez, 6 NY3d at 207). Depraved indifference assault likewise requires that same depraved indifference to whether the victim lives or dies, but intentional assault in the first degree, as charged here, requires proof that defendant intended, not to kill the victim, but rather to "disfigure" the victim "seriously and permanently, or to destroy, amputate or disable permanently a member or organ of [her] body" (Penal Law § 120.10 [2]). Given the clear difference between the elements of each, it would be difficult for a jury to infer that depraved indifference assault is a lesser degree of intentional assault (see Suarez, 6 NY3d at 211).
For these reasons, depraved indifference assault should not be constrained to the exceptions to the rule against charging depraved indifference murder in one-on-one killings.
IV.
That is not to say evidence of domestic violence automatically supports a verdict of depraved indifference assault in all cases. The People must marshal sufficient evidence to support each element of that crime, including the mens rea for depraved indifference. The defendant must recklessly create a grave risk of death and, in doing so, exhibit wanton cruelty, brutality, or callousness, combined with an utter indifference as to whether the victim lives or dies. The burden is a significant one, but it was met here: when viewed in the light most favorable to the People, the evidence presented the jury with a valid line of reasoning to find defendant guilty of depraved indifference assault.
Defendant's remaining contention is without merit. Accordingly, the order of the Appellate Division should be affirmed.

Rivera, J. (concurring). I agree with the majority that, when{**32 NY3d at 13} viewed in the light most favorable to the People, the evidence in this case presented the jury with a valid line of reasoning to find defendant guilty of depraved indifference assault (majority op at 
7-8). This appeal is controlled by the holding in People v Trappier, where the Court explained that "[a] defendant could [*7]certainly intend one result—serious physical injury—while recklessly creating a grave risk that a different, more serious result—death—would ensue from his actions" (87 NY2d 55, 57-59 [1995]). Thus, defendant is incorrect that because he intended to injure the victim, there is no way he could have acted with depraved indifference to creating a grave risk of death to the victim, and thereby caused her serious physical injury. Nevertheless, I disagree with the majority's suggestion that cases of depraved indifference assault are neither rare nor limited to a narrow subset of assaults (majority op at 
11-12).
A person is guilty of depraved indifference assault in the first degree when, "[u]nder circumstances evincing a depraved indifference to human life, [that person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person" (Penal Law § 120.10 [3]). This Court has clearly stated that "depraved indifference" is a culpable mental state that reflects a defendant's wanton cruelty, brutality, or callousness, combined with an utter indifference as to whether the victim lives or dies (People v Feingold, 7 NY3d 288, 294 [2006]; People v Suarez, 6 NY3d 202, 213 [2005]). This mens rea is the common element in depraved indifference assault and depraved indifference murder (compare Penal Law § 120.10 [3], with § 125.25 [2]; see also Feingold, 7 NY3d at 290 ["depraved indifference" has same meaning in murder and reckless endangerment statutes]). We have stated explicitly that "[t]his state of mind is found only in 'rare cases' " (People v Lewie, 17 NY3d 348, 359 [2011], citing Suarez, 6 NY3d at 218-219).
One of the lessons of our depraved indifference jurisprudence is that the depraved indifference mens rea is "not just recklessness" but a culpable mental state "best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (Suarez, 6 NY3d at 213-214). Of the two fact patterns the Court has identified as illustrating depraved indifference, one requires that the defendant "intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die . . . [with] {**32 NY3d at 14}utter callousness to the victim's mortal plight—arising from a situation created by the defendant," and the other involves a defendant who "acting with a conscious objective not to kill but to harm—engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (id. at 212). In neither scenario does the defendant merely show a reckless disregard for the victim's fate. In each case, a reasonable person would know the conduct put the victim's life in serious danger, and yet the defendant continues undeterred, consciously and callously.
The actus reus element of depraved indifference assault requires that the defendant cause serious physical injury to the victim. The Penal Law defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). By definition, a person who intentionally inflicts serious physical injury upon a victim may thereby create a substantial risk of the victim's death, and, as such, betray a reckless indifference as to whether the victim lives or dies. Under the majority's expansive construction of depraved indifference assault, the only difference between acting with the intent to cause serious physical injury (assault in the second degree [Penal Law § 120.05 (1)]), and acting with depraved indifference causing serious physical injury (assault in the first degree) in these situations is that in the former the defendant creates a "substantial risk of death," and in the latter the defendant creates a "grave risk of death," as in both crimes serious physical injury results. The majority also points out there are situations in which defendant was not necessarily intending to create a substantial risk of death, but only serious disfigurement, protracted impairment of health, or protracted loss or impairment of the function of a bodily organ (majority op at 
11-12). This does not affect the analysis because even if a defendant intended to, and did, cause the victim serious disfigurement, recklessly putting the victim's life in danger, this would not necessarily constitute depraved indifference assault. As we have held, "[c]ircumstances evincing a depraved indifference to human life are not established by recklessness coupled only with actions that carry even an inevitable risk of death" (Suarez, 6 NY3d at 214 [internal quotation marks omitted]). Suarez makes clear that an assault in which the defendant recklessly{**32 NY3d at 15} puts the victim's life in danger cannot be elevated into depraved indifference assault "merely because the actions of the defendant created a risk of death, however grave or substantial that risk may have been" (id. at 213 [emphasis added]).
The majority unpersuasively asserts that the concerns articulated in the Court's depraved indifference murder cases do not apply to depraved indifference assault (majority op at 
10-11). I disagree. The cases reflect concerns about an [*8]over-expansive construction of depraved indifference mens rea and possible jury confusion in perceiving the distinctive nature of this mental state. Thus, in Feingold, the Court clarified that defendants who acted with homicidal intent or mere recklessness do not, for that reason, act with depraved indifference, and so cannot be convicted of a crime for which depraved indifference is an element (7 NY3d at 292-293). Indeed, responding to the dissent's analogy with first-degree reckless endangerment, a crime involving depraved indifference (id. at 297-298 [Ciparick, J., dissenting]), the Court explicitly distinguished those earlier cases, observing "that [they] rest on the [different] premise that depraved indifference is measured not by a culpable mental state but by an objective assessment of the risk involved" (Feingold, 7 NY3d at 294 n 2). The fact that, in assault cases, a defendant may be convicted based on two different results is irrelevant. The question remains whether the mens rea as to one of those results reflects the narrow category of depravity that is the essence of depraved indifference. "Our cases make clear that the word 'indifference' is to be taken literally" (see Lewie, 17 NY3d at 359), and that directive holds regardless of whether the crime charged is murder or assault.
No more persuasive is the majority's speculative conclusion that jurors will not misperceive that depraved indifference assault is a less serious crime than intentional assault (majority op at 
12). It is not difficult to imagine that some jurors might believe intentionally amputating the limb of a victim (Penal Law § 120.10 [2]), for example, is worthy of greater punishment than an assault that causes serious physical injury when the defendant demonstrates a reckless disregard for the life of the victim. In my view, the animating concerns reflected in our depraved indifference murder jurisprudence resonate equally—if not more powerfully—in the depraved indifference assault cases, where one event may lead to multiple results based on different mens rea elements.
It is not possible to list with specificity those cases that will meet the criteria for depraved indifference assault, as "cases {**32 NY3d at 16}involving a depraved indifference to human life are highly fact-specific and dependent upon the individual defendant's particular mental state—a factor that may be extremely difficult to establish" (People v Heidgen, 22 NY3d 259, 276 [2013]). What we can say with confidence is that depraved indifference assault, like depraved indifference murder, is a category that befits only the rarest of cases (see Lewie, 17 NY3d at 359). Human experience shows that not every heinous act of violence will evince a depraved mens rea. As the majority correctly states, not every act of domestic violence will subject a defendant to prosecution for depraved indifference assault (majority op at 
12). Rather, a defendant may only be found guilty of depraved indifference assault where, like here, the defendant demonstrates an utter disregard for the value of the victim's life, simply not caring whether the victim lives or dies.

[*9]
Wilson, J. (concurring in the result). I concur in the result for a much simpler reason than that expounded by the majority.
Here, the jury found that "defendant intended to cause serious physical injury, convicting him of intentional assault in the second degree, while simultaneously finding that his abuse had recklessly created a grave risk of death" (majority op at 
8). The majority interprets those findings to mean that Mr. Wilson "acted with separate mental states regarding separate outcomes" (id.). Although the jury's verdicts were rendered simultaneously, that does not imply the crimes were committed at the same time. The evidence demonstrated that Mr. Wilson committed numerous separate batteries of his victim over the course of several months. As a result of his attacks, she was mentally incapacitated—and thus particularly vulnerable—for at least several weeks before her rescue, while the batteries continued. Viewing the evidence in the light most favorable to the People, the simplest basis on which to uphold the convictions is that Mr. Wilson acted with separate mental states, not regarding separate outcomes, but on separate occasions: attacking his victim at some times with the intent to cause serious physical injury and at others under circumstances evincing a depraved indifference to human life.
Although academically interesting, there is no reason in this case to ruminate about whether an assailant can consistently be found to harbor, simultaneously, an intent to seriously injure and a reckless indifference to whether the victim lives or dies. As Judge Rivera notes in her concurrence, that dual mens rea{**32 NY3d at 17} is likely exceedingly rare; to sustain Mr. Wilson's conviction, we need not surmise he harbored it.
Chief Judge DiFiore and Judges Stein, Fahey and Feinman concur; Judge Rivera concurs in result in an opinion; Judge Wilson concurs in result in a separate concurring opinion.
Order affirmed.

Footnotes

Footnote 1:
"A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when [that person] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).
Footnote 2:We consider defendant's argument about the general availability of the "particularly vulnerable victim" exception to the extent implicated by his claim that the evidence is insufficient to establish that the victim here was "particularly vulnerable." That claim, as we discuss, is without merit.

Footnote 3:In Suarez and its companion case, we discussed both exceptions in the context of one-on-one stabbings involving adult victims (6 NY3d at 212-213).