People v Hall (2020 NY Slip Op 02411)





People v Hall


2020 NY Slip Op 02411


Decided on April 24, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 24, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, WINSLOW, AND BANNISTER, JJ.


304 KA 15-01937

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
NIKEY J. HALL, DEFENDANT-APPELLANT.






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (CAITLIN M. CONNELLY OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (SCOTT MYLES OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered October 7, 2015. The judgment convicted defendant upon a jury verdict of assault in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of assault in the first degree (Penal Law § 120.10 [3]), arising from an incident in which his 14-month-old daughter (victim) sustained a neurologically devastating traumatic brain injury while in his exclusive care. We affirm.
Contrary to defendant's contention, Supreme Court did not abuse its discretion in ruling that, although the People could not introduce on their direct case evidence of certain post-crime behavior by defendant, the prosecutor would be permitted to cross-examine defendant about that behavior if he chose to testify (see generally People v Allen, 198 AD2d 789, 789-790 [4th Dept 1993], affd 84 NY2d 982 [1994]; People v Sandoval, 34 NY2d 371, 376 [1974]).
Defendant also contends that the court erred in admitting in evidence recorded telephone conversations between defendant and the victim's mother and aunt. Initially, defendant failed to preserve for our review his claims that the recordings should have been redacted and that they contained inadmissible hearsay (see CPL 470.05 [2]; People v McKenzie, 161 AD3d 703, 704 [1st Dept 2018], lv denied 32 NY3d 1113 [2018]; People v Wiley, 67 AD3d 1370, 1371-1372 [4th Dept 2009], lv denied 14 NY3d 845 [2010]), and we decline to exercise our power to review those claims as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). Contrary to defendant's further claim, even assuming, arguendo, that the recordings constitute Molineux evidence (see generally People v Ventimiglia, 52 NY2d 350, 359 [1981]; People v Molineux, 168 NY 264, 293 [1901]), we conclude that such evidence was properly admitted inasmuch as it was relevant to defendant's state of mind and motive, as well as to provide necessary background information, and the court did not abuse its discretion in determining that the probative value thereof outweighed the potential for prejudice (see People v Hansson, 162 AD3d 1234, 1239 [3d Dept 2018], lv denied 32 NY3d 1004 [2018]; People v Agee, 57 AD3d 1486, 1487 [4th Dept 2008], lv denied 12 NY3d 813 [2009]). To the extent that defendant contends that the court erred in failing to give a limiting instruction with respect to the recordings, he failed to preserve that contention for our review (see CPL 470.05 [2]; see People v Williams, 241 AD2d 911, 912 [4th Dept 1997], lv denied 91 NY2d 837 [1997]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Contrary to defendant's further contention, we conclude that the "evidence of prior injuries to the [victim] presented by the People was admissible to negate the defense of accident or mistake advanced by defendant," particularly in light of the fact that " the crime[s] charged [*2]. . . occurred in the privacy of the home and the facts are not easily unraveled' " (People v Riley, 23 AD3d 1077, 1077 [4th Dept 2005], lv denied 6 NY3d 817 [2006], quoting People v Henson, 33 NY2d 63, 72 [1973]; see People v Holloway, 185 AD2d 646, 647 [4th Dept 1992], lv denied 80 NY2d 1027 [1992]). We conclude that "the probative value of th[at] evidence outweighed its potential for prejudice" and, in addition, we note that the court minimized its prejudicial effect by providing limiting instructions that the jury was to consider the evidence only with respect to defendant's claim that the victim's injury arose from an accident (Riley, 23 AD3d at 1077; see Hansson, 162 AD3d at 1239). Furthermore, by failing to object to the testimony of a witness regarding her observation of certain prior injuries on the ground advanced on appeal, defendant failed to preserve for our review his additional challenge to that testimony (see CPL 470.05 [2]), and we decline to exercise our power to review that challenge as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
We reject defendant's contention that the court committed reversible error by admitting in evidence a photograph depicting a length of pipe that was discovered in defendant's residence. The court admitted the photograph for the "very limited purpose" of showing the object that defendant was questioned about by police investigators in a recorded interview that had already been played for the jury and cautioned that the photograph was not being offered to suggest that the pipe was an instrument used to inflict the injury on the victim. Contrary to defendant's contention, we conclude on this record that the court's cautionary instruction, which the jury is presumed to have followed (see People v Davis, 58 NY2d 1102, 1104 [1983]), sufficiently alleviated any prejudicial effect of permitting the jury to view the photograph (see People v Mendez, 104 AD3d 1145, 1145 [4th Dept 2013], lv denied 21 NY3d 945 [2013]).
Defendant contends that the evidence is not legally sufficient to establish that he recklessly engaged in conduct that created a grave risk of death to the victim nor that his conduct evinced a depraved indifference to human life. Defendant also contends that the verdict is against the weight of the evidence for the same reasons and because the evidence that he caused the victim's injury was not credible. As an initial matter, defendant failed to preserve for our review his challenge to the legal sufficiency of the evidence, both because his motion for a trial order of dismissal was not specifically directed at the alleged deficiencies identified on appeal (see People v Gray, 86 NY2d 10, 19 [1995]) and because he failed to renew his motion after presenting evidence (see People v Hines, 97 NY2d 56, 61 [2001], rearg denied 97 NY2d 678 [2001]). Nonetheless, " we necessarily review the evidence adduced as to each of the elements of the crime[] in the context of our review of defendant's challenge regarding the weight of the evidence' " (People v Stepney, 93 AD3d 1297, 1298 [4th Dept 2012], lv denied 19 NY3d 968 [2012]; see People v Danielson, 9 NY3d 342, 349-350 [2007]). We conclude for the reasons that follow that defendant's challenge is without merit.
"A person is guilty of depraved indifference assault in the first degree when, [u]nder circumstances evincing a depraved indifference to human life, [that person] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person' " (People v Wilson, 32 NY3d 1, 6 [2018], quoting Penal Law § 120.10 [3]). "To prove the requisite mens rea, the People must show both (1) recklessness creating a grave risk of death and (2) a depraved indifference to human life" (id.; see People v Barboni, 21 NY3d 393, 400 [2013]). A person "may be convicted of [a depraved indifference crime] when but a single person is endangered in only a few rare circumstances," primarily where the person exhibits "wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target" (People v Suarez, 6 NY3d 202, 212-213 [2005]; see People v Williams, 24 NY3d 1129, 1132 [2015]). In other words, "depraved indifference is an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (Wilson, 32 NY3d at 6 [internal quotation marks omitted]; see People v Feingold, 7 NY3d 288, 296 [2006]). "The mens rea of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence" (Feingold, 7 NY3d at 296).
Here, viewing the evidence in light of the elements of the crime as charged to the jury (see Danielson, 9 NY3d at 349), although an acquittal would not have been unreasonable, we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Contrary to defendant's assertion, the credible medical [*3]evidence refuted his claim to police investigators and others that the victim's injury was the result of an accidental fall down the stairs (see People v Waite, 145 AD3d 1098, 1100 [3d Dept 2016], lv denied 29 NY3d 953 [2017]; People v Bowman, 48 AD3d 178, 180, 184-185 [1st Dept 2007], lv denied 10 NY3d 808 [2008]). Indeed, the treating pediatric doctors testified that the victim had sustained a brain injury that was consistent with the infliction of significant blunt trauma to the head with force similar in magnitude to a high-speed car accident and was inconsistent with an accidental fall down the stairs (see People v Warrington, 146 AD3d 1233, 1236 [3d Dept 2017], lv denied 29 NY3d 1038 [2017]; Waite, 145 AD3d at 1100; see also People v Kuzdzal, 144 AD3d 1618, 1619 [4th Dept 2016], revd on other grounds 31 NY3d 478 [2018]). In addition, the jury was justified in concluding beyond a reasonable doubt that defendant inflicted the injury upon the victim inasmuch as the undisputed evidence established that the victim was in defendant's exclusive care at the time the injury occurred (see People v Keegan, 133 AD3d 1313, 1316 [4th Dept 2015], lv denied 27 NY3d 1152 [2016]).
Defendant further asserts that the evidence is consistent only with the conclusion that the person who inflicted the victim's injury acted intentionally and, therefore, the evidence does not establish the requisite mens rea component of recklessness. That assertion lacks merit. Although "[i]t may be true that the evidence presented to the jury leads inexorably to the conclusion that [defendant] acted voluntarily in his . . . conduct against the [victim] . . . , it does not [lead to the exclusive conclusion] that he intended to cause death or serious physical injury, in the sense of having that as a conscious objective or purpose" (Barboni, 21 NY3d at 404; see Wilson, 32 NY3d at 8). The evidence in this case would not have "compelled the jury to infer that defendant's state of mind was one of intent rather than recklessness" (Barboni, 21 NY3d at 404-405). Instead, the jury was justified in concluding beyond a reasonable doubt that defendant was aware of and consciously disregarded a grave risk of death to the infant (see Penal Law §§ 15.05 [3]; 120.10 [3]; People v Dallas, 119 AD3d 1362, 1366 [4th Dept 2014], lv denied 24 NY3d 1083 [2014]).
Defendant further asserts that the People did not establish the requisite mens rea component of depraved indifference to human life because he sought assistance for the victim. We reject that assertion. Here, the evidence established that the injury was inflicted sometime between 2:00 p.m., when defendant was left as the sole adult caretaker of the victim, and 2:44 p.m., when defendant called his fiancée, and that defendant did not call 911 until 2:56 p.m. The evidence therefore established that defendant did not immediately seek medical assistance following the injury; instead, according to his own statements to police investigators, he placed the victim on the couch where she began to vomit, then took the victim upstairs to wash her off in the bathtub where she somewhat responded to the water, returned downstairs to change the victim's diaper, and eventually called his fiancée and thereafter waited until her arrival several minutes later to call 911. We conclude that "[k]nowing the brutal origin of the injuries and the force with which they were inflicted makes it much less likely that defendant was holding out hope . . . that the child's symptoms were merely signs of a trivial injury or illness. Thus . . . it is significant that defendant was the actor who had inflicted the injuries in the first place" (Barboni, 21 NY3d at 402; see Dallas, 119 AD3d at 1366). In light of the totality of the credible evidence, including one of the recorded telephone conversations occurring less than a week before the incident in which defendant expressed that the victim was "[his] property" with which he could do whatever he wanted, thereby evincing his utter indifference to the victim's humanity, as well as "defendant's knowledge of how the injuries were inflicted and his failure to seek immediate medical attention," we conclude that the jury was justified in concluding that "defendant evinced a wanton and uncaring state of mind" (Barboni, 21 NY3d at 402; see Dallas, 119 AD3d at 1366).
Moreover, contrary to defendant's additional assertion, "the fact that [he may have appeared agitated,] panic-stricken and [emotional] by the time he finally did summon aid does not alter the case" (Waite, 145 AD3d at 1102). Here, "[t]he jury could rationally have concluded that he had the requisite mental state of callous indifference during the attack and the period in which he failed to seek [immediate] medical assistance . . . , and that he did not become [emotional] until he realized that the grievous harm he had inflicted could not be concealed" or remedied (id.). Defendant's " state of mind and the real reasons for [his later actions] . . . implicate[d] credibility questions' for the jury to resolve," and we conclude that there is no basis to disturb its determination that defendant's ostensible "belated expressions of concern did not reflect any interest in the victim's welfare" (Warrington, 146 AD3d at 1237).
Defendant further contends that he was denied effective assistance of counsel based on various alleged errors made by defense counsel. We reject that contention. " [I]t is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations' for [defense] counsel's alleged shortcomings" (People v Benevento, 91 NY2d 708, 712 [1998], quoting People v Rivera, 71 NY2d 705, 709 [1988]), and defendant failed to meet that burden here. Viewing the evidence, the law, and the circumstances of this case, in totality and as of the time of the representation, we conclude that defendant received meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
Finally, defendant's sentence is not unduly harsh or severe.
Entered: April 24, 2020
Mark W. Bennett
Clerk of the Court